## WHITSON *v.* CULBERTSON.

A contract for the delivery of "hogs," to be paid for at a certain price per hundred pounds "net," was held, in the absence of any explanatory evidence, to mean dead hogs, without blood, hair or entrails, ready for cutting up.

APPEAL from the *Wayne* Circuit Court.

PERKINS, J.—Suit by *Culbertson* against *Whitson* for damages arising out of a breach of contract. Recovery by the plaintiff. The case is as follows:

*Whitson,* by a written agreement, on which he received 5 dollars, dated *April* 16, 1852, sold to *Culbertson* "twenty-five head of fat hogs," to be delivered from the 1st to the 20th of *December* next following, for which *Culbertson* was to pay "4 dollars net per hundred pounds."

*Whitson,* it is alleged, failed to deliver the hogs. *Culbertson* sued for damages, and recovered 70 dollars, being the rise in the price of the hogs at the time for delivery, from the contract price.

*Whitson,* at the proper time, tendered to *Culbertson* twenty-five head of slaughtered fat hogs in fulfillment of his contract, and *Culbertson* refused to receive them, claiming that the contract called for live hogs.

This was *Whitson's* defence.

The Circuit Court, on a demurrer to it, decided with *Culbertson.* Counsel for *Whitson* assert that the decision of the Circuit Court was wrong. They say: "The contract was for hogs generally, and we contend that *Whitson* had the right to elect to deliver them dead or alive."

Counsel for *Culbertson* reply by quoting the following definitions from *Webster*:

"Hog. A swine; a general name of that species of animal.

"Pork. The flesh of swine, fresh or salted, used for food.

"Carcass. The body of an animal when dead."

And they say, "The appellant, in his brief, insists that 'a hog is a hog, dead or alive, and that it is hard to make anything else but a hog out of a hog.' We think the reverse of this proposition would be nearer the truth, and that the appellant would be compelled to exert his capacity to its utmost tension before he would succeed in making a hog out of a hog; but he would find no difficulty in converting a hog into pork, lard, bacon, carcass or almost 'anything else' but a hog."

In common parlance, undoubtedly, the term "hog" is applied, not unfrequently, to the dead as well as to the living. This circumstance tends to produce some ambiguity in the contract under consideration. That ambiguity might have been removed by the averment in the pleadings, or proof upon the trial, had one taken place, of extrinsic facts which would have demonstrated the intention of the parties. For example, it might have been shown that *Culbertson's* business was that of a hog slaughterer, &c., and that the fact was known to *Whitson;* in which case the presumption would be that live hogs were intended in his purchase. Or it might have been shown that he had a packing, but no slaughtering house, and that he was engaged in packing slaughtered hogs; in which case the inference would be that he intended to purchase dead hogs. Other illustrations might be added, but it is unnecessary. The record, however, contains nothing of the kind. The fact that the hogs were to be paid for at so much net per hundred pounds, throws some light upon the subject. See *Alexander et al.* v. *Dunn*, 5 Ind. R. 122.

We understand that among hog dealers, two descriptions are recognized and well understood, to-wit, gross hogs and net hogs; that the gross hog is the live hog, and the

net the dead hog, without blood, hair, or entrails, and ready for cutting up. Which kind was contemplated in the contract under consideration? As the net hog was to be paid for, the natural inference, unrebutted, would be that the net hog was to be delivered.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. B.* and *G. W. Julian*, for the appellant.

*O. P. Morton, J. S. Newman* and *J. P. Siddall*, for the appellee.