## MILLER v. STATE.

### (February 18, 1892.)

CRIMINAL LAW—APPEAL—MATTERS NOT APPARENT OF RECORD—NEW TRIAL—VENUE—INSANITY.

1. Where a motion is made in a criminal case in arrest of judgment, and the record is silent as to the truth of the grounds relied on to sustain the motion, the question as to whether the court below erred in overruling it will not be considered on appeal.

2. A motion for new trial, which merely alleges in a general way that the verdict is contrary to the law, and that there were errors occurring at the trial, presents no question on appeal.

3. On an indictment for murder, committed while defendant and two others were riding in a freight-car, the evidence was conflicting as to the time when they arrived at the state line, and whether or not the crime was committed within the state. Defendant, having been convicted, moved for a new trial on the ground of the misconduct of the jury and newly-discovered evidence. The affidavit in support of the motion alleged that one of the trainmen, who had been suopœnaed by the state, would testify that the train did not arrive at the state line until much later than the time testified to by the other trainmen; that the testimony of the said witness was material, and could not have been discovered by reasonable diligence before the trial; and that the foreman of the jury had told affiant that he himself had been a railroad man, and knew better than any of the witnesses where the train was at the time of the murder. *Held*, that the motion was properly overruled.

4. On an indictment for murder it appeared that defendant had been riding, with two others, in a freight-car, and had been forced to get out. Upon getting into a car in another train he found his former companions. Defendant testified that a few minutes later he shot and killed them, and that the killing occurred about daylight, at a station in an adjoining state. Before the trial he told a certain person that the killing occurred near a station in this state, which they reached about noon. At the first station within the state the train made a stop of several hours, which was the only considerable stop made. Besides other evidence tending to show that the deceased men were alive at that place, the defendant himself testified that he was with them in the car, and that he did not know whether they went out to get food there or not. *Held*, that the evidence was sufficient to show that the crime was committed within the state.

5. Where experts, who are put upon the stand in a murder trial for the purpose of proving defendant's insanity, all pronounce in favor of his sanity, the most that they are willing to say being to the effect that he is dull, or that he is not bright, and the defendant's own confession, which is strongly corroborated, shows that the purpose of the murder was robbery, the defense of insanity is not established.

6. A defendant in a criminal case is not entitled to demand a new trial or a reversal of the judgment on account of an error in the instructions, where it is clear from the evidence that the verdict is right, and that a new trial would, under correct instructions, produce the same result.

Error to district court, Laramie county; RICHARD H. SCOTT, Judge.

Indictment against Charles Miller for murder. From a judgment of conviction, defendant brings error. Affirmed.

*F. D. Taggart*, for plaintiff in error. *Charles N. Potter*, Atty. Gen., and *John M. Davidson*, for the State.

CONAWAY, J. Plaintiff in error was tried and convicted, at the November term, 1890, of the district court for Laramie county, of the crime of murder in the first degree, and sentenced to suffer the extreme penalty of the law. He brings the cause into this court by his petition in error, which contains 23 assignments of error. The twenty-third assignment of error is that the court (the trial court) erred in overruling the motion of defendant (the plaintiff in error) for a stay of execution of sentence. This assignment need not be considered now. The stay was procured by plaintiff in error under section 3355 of the Revised Statutes, providing that in all cases of conviction where the punishment shall be capital the court or judge allowing the writ of error shall order a suspension of the execution until such writ of error shall be heard and determined. The twenty-second assignment is that the court erred in overruling the motion of defendant in arrest of judgment. Rev. St. 1887 provides as follows: "Sec. 3350. A motion in arrest of judgment may be granted by the court for either of the following causes: *First*, that the grand jury which found the indictment had no legal authority to inquire into the offense charged, by reason of its not being within the jurisdiction of the court; *second*, that the facts stated in the indictment do not constitute an offense." The motion in arrest does not set up either of these causes. Besides, as a matter of law, the offense charged is within the jurisdiction of the court, and an inspection of the indictment shows that the facts therein stated do constitute an offense. The grounds actually set up for the motion in arrest are some alleged irregularities in the selection of jurors. The record is entirely silent as to the truth of the facts alleged as constituting such irregularities. It is not necessary to say anything fur-

ther to show that it is not made to appear that the court below erred in overruling the motion to arrest the judgment. The allegations in the motion itself, or even in affidavits, if there were any, accompanying it, cannot be accepted as proof of facts which, if true, are matters of record. In a matter of such grave moment to the plaintiff in error, however, it is a satisfaction to reflect that none of the matters set up in this motion are such as affect in the slightest degree the merits of the case, or the righteousness of the verdict and judgment. They are all matters of procedure that might have been raised by motion to quash or plea in abatement, and which are waived when not so raised. Rev. St. § 3266. But it is useless to discuss the motion. We cannot consider matters *dehors* the record.

The twenty-first assignment of error is: "The court erred in overruling the motion of defendant for a new trial." This assignment includes in its scope the matter of the preceding 20 assignments. They were all presented to the court below as grounds for a motion and supplemental motion for a new trial, and the ruling of the court below upon each is sufficiently questioned by the general assignment No. 21, above quoted. So it is now only necessary to determine whether the court below erred in overruling the motion and supplemental motion of plaintiff in error for a new trial. As what is termed the "supplemental motion for a new trial" includes substantially all the reasons for a new trial alleged in the motion for a new trial, they will be considered together. The supplemental motion for a new trial begins with the following reasons: "(1) Because of irregularities of the jurors who rendered the verdict; (2) because of newly-discovered evidence, material for the defendant, which he could not with reasonable diligence have discovered and produced at the trial." These appear as Nos. 5 and 3, respectively, in the motion for a new trial, and are supported by the following affidavit: "Frank D. Taggart, being duly sworn, deposes and says that he is the attorney for the defendant, Charles Miller, in the above-entitled case; that he has discovered new evidence material for the defense, which he could not with reasonable diligence have discovered and produced at the trial; that Oscar Leech, the front brakeman on Conductor Hubbard's train, who was subpœnaed by the state in the trial of

the foregoing case, will testify that the said train did not arrive at the state line until a time much later than testified to by the other brakeman and the conductor and fireman of said train; that the foreman of the jury which rendered the verdict in the above-entitled case told affiant that he had been a railroad man himself five or six years ago, and he knew better than any of the witnesses who testified as to the time of the train on which the dead bodies were found, where the train was at daylight." And this is all. It is clearly insufficient. Comment is unnecessary. The second ground in the motion and the fourth in the supplemental motion are to the effect that the verdict is contrary to law. Why contrary to law is not alleged. This general allegation presents no question of law for our consideration. The fourth ground alleged in the motion is because of errors of law occurring at the trial. There is the same defect in this as that just mentioned. The general allegations of errors of law present no question for determination. What the errors are that are complained of should be shown.

The first ground alleged in the motion for a new trial and the third in the supplemental motion is that the verdict is not sustained by sufficient evidence, and the fifth in the supplemental motion is that the verdict is contrary to the evidence. These may be considered together. It does not appear from the bill of exceptions whether it contains all of the evidence or not. It purports merely to contain all of the "testimony." The certificate of the stenographer is to the effect that it contains all of the evidence, but that is merely for the information of the trial judge, and is not proper evidence of the fact in this court. It should be shown by the certificate of the trial judge. It is his function to ascertain and certify to this court whether or not the bill contains all of the evidence. The certificate of the stenographer cannot be substituted for that of the judge. But in this instance, as sufficient of the evidence appears to determine these alleged reasons for a new trial on their merits, we will, *in favorem vitæ*, consider the evidence appearing in the record as presented. The shooting of Emerson, and Fishbaugh, his companion, by plaintiff in error, of which shooting Emerson immediately died and Fishbaugh died in a short time, and the immediate robbery of the bodies while Emerson was lying dead, and Fishbaugh was in a dying condition,

are circumstantially related by plaintiff in error. This appears both from his admissions proven as made out of court and from his testimony in court. The motive for the murder is sufficiently shown by the immediate robbery. In his admissions to the witness Stewart he states that while in the car, and before the shooting, he conceived the idea of killing them for their money. There is an effort apparent to show by the testimony of plaintiff in error in his own behalf some other motive for the double murder, but this effort fails. It is true, in answer to a question as to whether he ever felt any unkindness to the persons whom he killed, and to state how he did feel towards them at the time, he says: "I knew they had a revolver, because I saw them buy five shots for it at Sidney, and put them in the gun; and I supposed when they left me on the corner they were making out some scheme for me; and when I was in the car I was afraid they were going to do something to me." But, supposing this to constitute some palliation for the crime, if true, he does not adhere to it. He is soon asked again to state how he felt at the time of the shooting, and he replies: "I thought I was far away from my folks, and wanted to get back, and didn't know how; and I was all ragged, and cold weather was coming on, and nothing to eat, and no money, and I didn't know what to do." With but one intervening question as to how long it was from the time he first thought of the crime until he committed it, and his answer that he could not remember ever thinking of it at all, he is asked the third time how he felt at the time. He answers: "I felt that I was far away from my brothers, and that I had nothing to eat, no money, and was all ragged,—was all." He forgot this time to mention his hunger. His statement that he was afraid they "were going to do something to him then" is inconsistent with his other testimony. He met them east of Sidney, (he thinks at Julesburg,) and the three of them rode from there to Sidney together, and they did not abuse him, and no unkind words passed between them. They were put off the train leaving Sidney, and after they had been put off he thought they did not want to travel with him because he was ragged. They told him to take one road, and they would take another. That night, at Sidney, he saw a long freight train come in, and he got into a stock-car covered himself with hay, and went to sleep before the train pulled out. When he awoke, it was coming daylight, and he left the car, took some hay with him, and got into a box-car. Emerson and Fishbaugh were in this car. Plaintiff in error says that when he threw his hay up it fell down, and "it called their attention; and one of the fellows [Fishbaugh, he says afterwards] called, 'Hello, kid!' and I got in, and started to lay down; never slept at all; got up. The train had just started up. It was about five minutes after I got in, it was done. It was all done before I knew it." Immediately afterwards he says it was "all done in a minute." So, according to his own statement, he went into the car with these men, whom in a very few minutes he murdered as they lay quietly sleeping or resting, and nothing had occurred to arouse his fears. He states repeatedly that at the time of the shooting Fishbaugh was asleep, but he did not think Emerson was; or, as he once puts it, he did not know whether Emerson was asleep or not. His statement that he was afraid of them is evidently an afterthought. But if he was, it was no excuse for his murderous attack upon them under the circumstances. His testimony that he shot the young men so soon after getting into the car with them is evidently untrue. His statement made to the witness Stewart soon after his confession of the crime to his brother, and his conclusion, by his brother's advice, to give himself up, corresponds with his testimony as to the time he got into the car with Emerson and Fishbaugh, and what occurred at the time. He fixes the time, both in his statement to Stewart and in his testimony, as early in the morning, while it was still dark, though daylight was "just coming." His statements both agree that on his first attempt to throw his bunch of hay into the car it fell down, and that it attracted their attention, and that Fishbaugh said, "Hello, kid!" But he told Stewart that the shooting was done about six miles east of Hillsdale, and that the train reached there about noon. This time, according to the evidence of the trainmen, is approximately correct. Besides other evidence tending to show that Emerson and Fishbaugh were alive and unhurt at Pine Bluffs, the plaintiff in error himself testifies that he was in the car with them where the train stopped two or three hours, and that he was hungry then, but never thought about asking

Miller v. State.

them for money to get something to eat; and further, that he does not know whether they got off and obtained food or not, and that he had put his hay into this car at the "place before they stopped two or three hours." Pine Bluffs is the only place where they stopped so long or nearly as long. All this is more satisfactory as to the fact of the young men being alive at Pine Bluffs, Wyo., than his direct statement to that effect could have been, for it is painfully apparent that plaintiff in error has little regard for the truth. He asserts in his testimony that he shot the young men at break of day, before it was light, as the train was leaving a little station east of Pine Bluffs, and that he remained in the car with the bodies until the train reached Hillsdale, about noon, including the two or three hours' stop at Pine Bluffs. This is incredible. He also claims that he killed the men with one shot each, in the darkness of the box-car, with one door partly open, before it was light, in the morning. It seems impossible that he could do this, or at least extremely improbable, in the dark, and he would know better than to attempt it. From this and other evidence, not necessary to rehearse here, it is clear that Emerson and Fishbaugh were alive and well at Pine Bluffs. At Hillsdale they were found in the box-car; one dead, and the other in a dying condition. The object in fixing the time of the murder at or before daylight in the morning, and at some station east of Pine Bluffs, is apparent when it is considered that the Wyoming state line is only about a mile east of Pine Bluffs, and the station referred to could not be in Wyoming. But this testimony of plaintiff in error as to the exact time and place of the murder is evidently false. It would seem to be another after-thought, and for a youth, considering how it fits the defense of venue, quite a shrewd one.

The only other defense attempted was that of insanity. This defense utterly fails. The experts put upon the stand by the defense in the trial court all pronounced plaintiff in error sane. The most they will say for him is that he is a dull boy, or that he is not a bright boy, or something to that effect.

The confession made to the witness Stewart is a confession of murder for the purpose of robbery. The confession made by testimony in open court is of murder and robbery. There is other evidence strongly corroborating this. There is no question of the fact of murder, without a shadow of palliation or excuse, followed by the immediate robbery of both bodies, one not being quite dead. The verdict is in accordance with the evidence, and is abundantly sustained by the evidence.

This disposes of all the reasons for a new trial set up in the motion therefor, and the first five of those set up in the supplemental motion. The remaining reasons alleged in the supplemental motion are all founded upon instructions given to the jury by the court over the objection of the plaintiff in error, and upon instructions asked for by him, and refused by the court. The rule as to reversing judgments on account of erroneous instructions to the jury by the court, and stated by Thompson on Trials as the rule of nearly all the courts, is "that no judgment will be reversed on account of the giving of erroneous instructions, unless it appear probable that the jury were misled by them." And again: "Of course, it can never be said that the jury were misled by the giving of erroneous instructions where they have reached the correct result by their verdict. Accordingly it is the practice of most of the courts, before passing upon exceptions to instructions, to look into the evidence, and see if the verdict was right; and, if it is found to be so, the court will look no further." 2 Thomp. Trials, §§ 2401, 2402, and authorities there cited. This rule is sustained by very numerous authorities of the highest respectability. Some courts say that the doctrine of error without prejudice does not apply to the same extent in criminal as in civil cases, and some courts hold that error in the instructions will be presumed to be prejudicial. Admitting, without discussing or deciding either point, that both of these restrictions of the rule are correct in their proper application, it may safely be said that it is never the right of a party to demand a new trial in any case, civil or criminal, on account of error in the instructions to the jury where it is clear from the evidence that the verdict is right, and that a new trial ought to produce the same result, or would, under correct instructions, certainly produce the same result. Such a case is this. The technical defense as to venue fails. The venue is satisfactorily established beyond any reasonable doubt. The facts of the shooting of the young man Emerson and his companion, and the immediate robbery of their bodies, is admitted by plaintiff

Miller v. State.

in error in his confession to Stewart, and in his testimony on trial. He told Stewart that he conceived the idea of killing them for their money. There is other evidence probably sufficient of itself to justify and support a verdict of guilty. The defense of insanity completely fails. The testimony of plaintiff in error does not indicate even that he is a dull boy, which is the most the experts say upon the question of his sanity. He exhibits a sound memory, and rather an unusually minute and consecutive recollection of the events of his life from early childhood to the time of the trial. The impression of dullness may have been produced by a habit apparent from his testimony of answering, "I don't know," evidently to avoid troublesome explanations, or when, as he testifies in one instance he did, he resolves to say nothing. This is often the wisest and shrewdest thing for one in his situation to do. No useful purpose can be subserved by a new trial. No advantage could accrue to the plaintiff in error. No new evidence could affect the result. By his own confessions and testimony plaintiff in error has placed upon record evidence that must always result in his conviction on a fair trial. Other evidence of his guilt is satisfactory. Another trial must necessarily result in his conviction under any correct instructions. He has followed his brother's advice to the extent of confessing his crime, but not to the extent of pleading guilty, and appealing to the mercy of the court. But this is a case in which neither the trial court nor this court has any discretion or any power to grant clemency or extend mercy. Upon a verdict of guilty, or on a plea of guilty of murder in the first degree, the trial court must pronounce the sentence of the law. Upon a record showing that such sentence was lawful and right, this court must affirm it, and fix the time for its execution. Enough has already been said to show that this court can take no other course. The evidence shows a cold-blooded, atrocious murder, with seldom a parallel. If there be any considerations which may be urged in favor of clemency and mercy in this case, this court cannot entertain them. That is the function and duty of the executive, in whom is lodged the pardoning and the commuting power. This court considers only the record and the law. The verdict of the jury is fully sustained by the evidence. No other verdict could have been reached by jurors who regard their legal duties and the obligations of their oaths. Overriding in favor of the plaintiff in error positive provisions of statutory law, considering portions of the record not properly before us, following the trial court in considering the supplemental motion for a new trial, although filed long after the time limited by law, we find no prejudicial error in the proceedings of the trial court. The judgment of the court below is in all things affirmed, and the court now appoints Friday, the 22d day of April, in the year of our Lord 1892, for the execution of the sentence pronounced by the court below.

GROESBECK, C. J., and MERRELL, J., concur.

GROESBECK, C. J., (concurring.) While agreeing with the other members of this court in the views expressed in the opinion of Mr. Justice CONAWAY, I desire to add that I do not believe that the instructions of the court below to the jury were erroneous or misleading. It is true that they are not artistically drawn, but I do not think that they are incorrect. The distinction between murder in the first and in the second degree is clearly put, and the crime of manslaughter is well defined. The first count of the indictment is evidently framed on the language adopted by the courts in defining murder in the first degree before the passage of the present law,—the crimes act of 1890. It charges the assault and the crime by employing the words "willfully, deliberately, and premeditatedly," used in the old statute, and also employing the common-law words in addition thereto, "with malice aforethought;" while the second count uses the words from the new statute, which are therein declared to be sufficient, without setting out the manner and means of committing the crime,—that is, that the plaintiff in error "did feloniously and with premeditated malice kill and murder the said Waldo Emerson." Some of the instructions would seem to imply that the words here used are of equivalent import. The jury were charged, however, that "to constitute murder in the first degree there must have been an unlawful killing done, purposely and with premeditated malice;" and again, "to give homicide the legal characteristics of murder in the first degree, as the defendant stands charged in the indictment, it must have been perpetrated with premeditated malice. The

Miller v. State.

premeditation is just as essential an ingredient of the offense as the act which caused the death. Without the concurrence of both the premeditation and the act of killing, the crime of murder in the first degree cannot exist; and, as every man is presumed to be innocent of the offense of which he is charged till he is proven guilty beyond a reasonable doubt, this presumption must apply equally to both ingredients of the offense,—to the premeditation as well as to the killing; and unless you can find beyond a reasonable doubt that the defendant fired the shot with premeditation, it will be your duty to acquit the defendant of murder in the first degree." It will be seen that the statute as it existed at the time of the commission of the alleged crime and since that time has been closely followed by the court below, and there is no error in that respect. Neither is there any error as to the instructions as to murder in the second degree or defining manslaughter.

It seems that the defense was twofold: (1) Failure to prove the venue, and (2) insanity of the defendant. The venue, as has been clearly shown in the opinion of Mr. Justice CONAWAY, was proven beyond a reasonable doubt, and the attention of the jury was called to the matter of venue in the following instruction: "Venue is one of the material facts in this case, and must be proven, like other material facts, beyond a reasonable doubt. If, from the evidence, you have a reasonable doubt as to whether the crime, if crime there was, was committed in this state, or in another state, you will give the benefit of the doubt to the defendant, and return a verdict of not guilty." There was no exception to this instruction, and it must have been deemed sufficient and satisfactory. The defense of insanity was not established at all, as has been well said; yet the court gave the following instruction to the jury upon that point: "The jury are instructed that if, from a careful comparison and consideration of all the evidence, you have or entertain a reasonable doubt as to whether or not the defendant was sane at the time of the alleged commission of the offense charged, then you will find

the defendant not guilty." This is certainly the most favorable instruction that could have been given for the defendant. It has been held by many courts that insanity must be proven by a preponderance of evidence to remove the presumption of sanity. The defendant below, through his counsel, asked the court to instruct the jury "that the law presumes every man to be sane; but if you find from the evidence that there is proof tending to show an insane condition of the mind of the defendant at the time of the commission of the alleged crime charged in the indictment, then it becomes incumbent upon the state to prove to your mind beyond a reasonable doubt that the defendant was sane at the time of the commission of the alleged crime." This instruction, I believe, is predicated upon an opinion of the supreme court of Nebraska; but, admitting that it is a correct interpretation of the law relating to insanity as a defense to crime, of which there is much question in my mind, it is met by the fact that there was no evidence introduced or brought out at the trial of this case "tending to show an insane condition of the mind of the defendant" at the time of the homicide, so that the burden of proof could be shifted upon the state. The collapse of this branch of the case is shown by the opinion of Mr. Justice CONAWAY, and further comment upon the evidence in that regard is unnecessary. This disposes of the other points that have not been touched upon in the opinion of the other members of the court, and it is unnecessary to multiply words to state intelligently the other grounds of error relied upon by counsel for this unhappy youth. It is a sad case, and has been well considered by the court, owing to the youth of the plaintiff in error. He was of the age of accountability at the time of his great crime, and he must suffer the extreme penalty of the law. This court cannot burden the public with the expense of another trial of this case from mere sentiment. There has been no prejudicial error in the case, and I agree with my learned brethren that the judgment of the court below should be affirmed.