## CLAY v. STATE.

CRIMINAL LAW— HOMICIDE— EVIDENCE— CONFESSIONS— INCRIMINATING STATEMENTS — ADMISSIBILITY — ACCOMPLICE — INSTRUCTIONS — ERROR WITHOUT PREJUDICE—CORROBORATION OF ACCOMPLICE—PRESUMPTION—CONCERNING STATEMENTS OF ACCUSED—ERRONEOUS INSTRUCTION—MURDER COMMITTED BY ONE ENGAGED IN ROBBERY— INCONSISTENT INSTRUCTIONS—PREJUDICIAL ERROR.

1. The object and purpose of preliminary examinations of witnesses as to incriminating statements of an accused on trial

for crime is to determine whether the statements ought in
any event to go to the jury; if it clearly appears that they
were made under a promise of immunity from punishment,
duress, or by putting in fear, then they should be ex-
cluded. If, however, it appears that such statements were
voluntary, or the evidence is conflicting on that point, then,
in either event, such statements should go to the jury,
together with evidence of the facts and surrounding con-
ditions at the time they were made, with instructions to
determine their character, and if, from the evidence, the
jury finds that they were not voluntary, then to exclude
them from their consideration; otherwise, to consider them
with the other evidence in the case, and give them such
weight as in their judgment they are entitled to.

2. A prisoner, suspected of complicity in a murder committed
in an adjoining county, but who had been informed by the
sheriff that he answered the description of one wanted on
a charge of murder in a distant state, on the pretense of
permitting him by identification to prove that he was not
the one wanted in such other state, was taken by the sheriff,
who had him in custody, to the county seat of said adjoin-
ing county for the real but undisclosed purpose of possible
identification as one concerned in the aforesaid murder in
such county by an accomplice there confined in jail. Upon
being suddenly confronted in the sheriff's office with the
accomplice, the latter, in the presence of the officers, accused
him as the guilty party in the murder aforesaid, to which
accusation the prisoner made an incriminating reply. On
the trial of the said prisoner for the homicide aforesaid, it
appeared from the preliminary proof as to the admissibility
of his incriminating statement, made as aforesaid to the
accomplice, that no inducement, threat or promise of reward
or immunity had been held out to him; that he had not
been confronted with the accomplice for any other purpose
than that of identification, and that an accusation as to his
guilt by the accomplice had not been advised or contem-
plated by the officers. *Held*, that the incriminating state-
ment was admissible, and no error was committed in per-
mitting the same to go to the jury.

3. It is proper, and the better practice, in a criminal case, where
the question is involved as to whether or not any witness
is an accomplice, to leave the jury free to determine from
the evidence whether any witness is an accomplice, under
a proper instruction as to what in law constitutes an ac-

complice, together with the customary instruction with reference to the evidence of any witness found to be such.

4. The question as to whether or not a witness in a criminal .case is an accomplice is one of fact and goes to the credibility of the witness and to the weight of his testimony; and it is not error for the court to instruct the jury as to what in law constitutes an accomplice, and that it is a question for them to determine from the evidence as to whether or not any witness who testified in the case was an accomplice.

5. A defendant in a criminal case is not in a position to complain on error of an instruction given at the request of the prosecution, which states the law the same as in an instruction given at his own request.

6. In a criminal case, the jury should not be instructed that they may base their verdict upon the uncorroborated evidence of an accomplice, if they believe it to be true, unless such an instruction be accompanied and properly explained by other instructions, since, standing alone, such an instruction excludes, by implication, other evidence in the case from consideration. Such an instruction, standing alone, is error, when there is evidence tending to explain, contradict, or affecting the weight of the corroborating testimony.

7. A defendant in a criminal case cannot complain on error of an instruction that the uncorroborated testimony of an accomplice is sufficient upon which to base a verdict of guilt, if the jury are satisfied of its truth beyond all reasonable doubt, where the court, at the defendant's request, gave a like instruction, coupled with the usual caution that it was questionable if the jury should convict upon such testimony, and "that it was dangerous to do so unless the testimony of the accomplice is corroborated by evidence tending to connect the accused with the crime charged, and that there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime."

8. Where the *corpus delicti* in a homicide case is clearly established, independent of the testimony of an alleged accomplice, incriminating statements of the accused, which have been properly admitted in evidence, are entitled to consideration by the jury as corroborative of the testimony of the accomplice connecting the accused as a criminal agent in the commission of the crime.

9. A defendant in a criminal case is not in a position to complain of an instruction given at the request of the prosecution with reference to the testimony of an accomplice, for a failure of such instruction to state what constitutes corroboration of such testimony, where, at defendant's request, the court instructed the jury in that respect that "there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime."

10. An instruction concerning corroboration of the testimony of an accomplice that "there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime," fairly stated what constituted a material fact upon which corroboration was necessary.

11. In a criminal case an instruction is erroneous as being upon the weight of the evidence which states that in any conversation proven by the state what the defendant said against himself the law presumes to be true, because against himself, but what he said for himself the jury were not bound to believe, but might treat them as true or false just as they believed them to be when considered with the other evidence in the case.

12. The error in an instruction in a criminal case that what the defendant said against himself in any conversation proven by the State the law presumes to be true is not cured by another instruction that the jury are the sole judges of the weight to be given to the defendant's statements, and that, unless they were entirely satisfied to the exclusion of every reasonable doubt that the statements were made freely and voluntarily, they should disregard them altogether; since the two instructions are irreconcilable, and the latter in no way destroys the effect of the former.

13. The presumtion that what a defendant in a criminal case may have said against himself in any conversation proven. by the State is true goes only to the competency and admissibility of the statement in evidence, and only exists as a basis for admitting any such statement in evidence, but such presumption does not follow the statement after its admission in evidence for the jury's consideration.

14. If two persons are jointly engaged in committing the crime of robbery, and while so engaged a homicide is committed by either or both of them, both are guilty of murder in the first degree as defined by statute. (Rev. Stat., Sec. 4950.)

15. An erroneous instruction in a homicide case that what the defendant said against himself in any conversation proven by the State the law presumes to be true, because against himself, is held to have been prejudicial and sufficient to reverse a conviction of murder in the first degree. (Potter, C. J., dissenting.)

[Decided June 26, 1906.]          (86 Pac., 17.)
[Rehearing denied August 3, 1906.]

ERROR to the District Court, Albany County, HON. CHARLES E. CARPENTER, Judge.

Henry E. Clay was tried upon an information charging him with murder in the first degree for the killing of one George Gerber. He was found guilty as charged in the information, and sentenced to suffer the death penalty. He prosecuted error. The material facts are stated in the opinion.

*Thomas H. Gibson,* for plaintiff in error.

The evidence showing conclusively that Burney, a witness for the prosecution, testified under promises from the attorneys for the prosecution, thereby being treated as an accomplice, it was error to charge the jury that it was for them to determine from the evidence whether any witness is an accomplice or not. The instructions should have treated Burney as an accomplice. (2 Ency. Ev., 98; Smith v. State, 10 Wyo., 166.) It was also error to instruct that while a person may be convicted upon the uncorroborated testimony of an accomplice, the jury ought not to convict upon such testimony alone, unless they are satisfied, after a careful consideration of such testimony, of its truth beyond a reasonable doubt. As an abstract proposition, no doubt the jury have the power to do so and may convict upon the uncorroborated testimony of an accomplice, just the same as they have the power to and may convict upon the unsupported testimony of any other impeached witness; "but it is questionable if they have the 'right' to convict a person of a felony upon the uncorroborated testimony of an accomplice, and the authorities are uniform that they ought

not to do so." (Smith v. State, 10 Wyo., 165; Johnson v. State, 4 Greene, 65; Ray v. State, 1 id., 316.) Instead of properly defining legal corroboration, and telling the jury not to convict upon the uncorroborated testimony of an accomplice, the court assumed to control the verdict of the jury by telling them, under the guise of a statement of law, that the uncorroborated testimony of the accomplice makes out a case against the defendant, and that they ought to convict upon such testimony in this case. It amounts to nothing less than a positive instruction that "while it is a rule of law that a person 'may' be convicted upon such testimony, and, therefore, the jury are at liberty and may exercise their discretion as to whether they will do so in any case, nevertheless, the testimony of an accomplice, when believed by the jury, makes out a case against the defendant, and the jury ought to convict upon such testimony in this case, if they believe beyond reasonable doubt that it is true." (Ware v. State, 69 Ga., 349; Hart v. State (Tex.), 82 S. W., 653.)

The court erred in instructing that "if you believe he (the accomplice) speaks the truth, and such evidence is corroborated upon any material fact, you should find the defendant guilty." By conditioning the jury's verdict solely upon their belief that the accomplice "speaks the truth, and such evidence is corroborated upon any material fact," this instruction virtually directed a verdict against the defendant. It not only gave such evidence undue prominence and intimated the opinion that it was worthy of belief, but it decided, in advance, the weight the jury should attach to it when believed, and took from them all power of further considering whether they would be satisfied beyond all reasonable doubt to find the defendant guilty upon the whole evidence, or even this selected portion of it. (Com. v. Holmes, 127 Mass., 441.) To be legally sufficient, the corroborative evidence must "tend to confirm the testimony of the accomplice upon a point material to the issue, in the sense that it tends to prove the guilt of the defendant" (McNeally v. State, 5 Wyo., 69); therefore, it cannot be denied that

there are facts which, tending to arouse suspicion, prove motive or opportunity to commit crime, are very material as connecting links in the formation of chains of circumstantial evidence, but which, standing alone or disconnected from the crime charged, in no sense tend to prove the guilt of the defendant by connecting him with that crime. (State v. Willis, 9 Ia., 582; State v. Gillian, 3 Tex. Crim., 133; People v. Morton (Cal.), 73 Pac., 699.) Such being true, the courts have constantly reversed cases where juries were permitted to convict upon accomplice evidence that was corroborated upon material facts, but which were deemed insufficient in law to render the convictions safe. (State v. Willis, 9 Ia., 582; State v. Gillian, 3 Tex. Crim., 451; People v. Morton (Cal.), 73 Pac., 609; State v. Odell, 8 Ore., 30; Smith v. State (Ky.), 17 S. W., 182; State v. Mikesell, 30 N. W., 474.) Was not the instruction an explicit statement that the evidence of the accomplice, if believed by the jury, and corroborated upon any material fact, made out a complete case against the defendant and bound the jury to return a verdict of guilty? (McVeigh v. State, 43 Tex. Crim., 62 (S. W., 757); Hart v. State (Tex.), 82 S. W., 653; Rice v. State, 3 Tex. Crim., 451; Tipton v. State, 30 Tex. Crim., 532.)

With the exception of the supposed confession, which was incompetent and admitted in evidence over the objection of the defendant, there was no evidence which in any sense tended to prove the guilt of the defendant by connecting him with the crime charged, but that of the accomplice; but there was evidence which tended to show that the defendant, while living in the same town, had on different occasions prior to the date of the alleged murder visited the store of the deceased, and that he was in the same town on or about the same day that the crime was alleged to have been committed. This evidence, while it was material for the consideration of the jury in connection with the other evidence, did not corroborate the accomplice. (State v. Willis, *supra;* State v. Gillian, *supra;* People v. Morton, *supra;* State v.

Odell, *supra;* Smith v. State, *supra;* State v. Mikesell, *supra.*)

If it be assumed that the supposed confession was competent and legally sufficient to corroborate the accomplice, the error of the above instruction would in no sense be mitigated; for, in addition to the above grounds of objection, the jury would have been left "to grope in the dark" as to what was and was not "corroboration" and "material facts," and, therefore, almost certain to rely upon the suspicious circumstances as the corroboration of the accomplice. (Smith v. State, 10 Wyo., 165-6; State v. McLain, 159 Mo., 340; State v. Miller, 100 Mo., 606; Minshall v. State (Tex.), 42 S. W., 990.)

The instruction that, in considering alleged admissions of defendant, what he said against himself the law presumes to be true, because against himself, is erroneous. (State v. Hudspeth (Mo.), 51 S. W., 487; State v. Hollingsworth, 56 S. W., 1089.) The same erroneous principle was again stated in another instruction, which was error for the additional reason that it laid undue stress upon the erroneous statement. (Hughes on Instr., 25; Sackett on Instr., 13; 12 Cyc., 649.) The seventeenth instruction contained the same erroneous principle, and was an invasion of the province of the jury by commenting on the evidence. (Pharr v. State, 7 Tex. Cr., 478; Dixon v. State (Ga.), 39 S. E., 846; Covington v. State, 7 id., 153.) The court should have given the instruction requested by the defendant, stating that Burney was an accomplice, and the necessity of corroboration. The law regards an accomplice, when called to testify, as an impeached witness, and his testimony as coming from a polluted source. (Johnson v. State, 4 Greene, 65; Ray v. State, 1 id., 316.) It was the duty of the jury not to convict upon the evidence of the accomplice until they were satisfied beyond all reasonable doubt that he was corroborated, by independent evidence, which in itself tended to prove the guilt of the defendant by connecting him with the commission of the crime charged in the

information.    (McNeally v. State, 5 Wyo., 69; Smith v. State, *supra;* People v. Morton (Cal.), 73 Pac., 609; State v. Willis, 9 Ia., 582; State v. Gillian, 3 Tex. Crim., 133; State v. Odell, 8 Ore., 30; Smith v. State (Ky.), 17 S. W., 182; State v. Mikesell (Ia.), 30 N. W., 474; Com. v. Holmes, 127 Mass., 445.)    And to merely prove "that the crime was committed in the manner described by the accomplice" (Ency. Ev., 196), or "merely to connect the defendant with the accomplice, or other person participating in the crime" (Id., 107), would not be sufficient corroboration, "but evidence, independent of the testimony of the accomplice, must tend to connect him with the crime itself, and not simply with its perpetrators."

All confessions are *prima facie* incompetent, and, when called in question by the defense, the prosecution must first lay the foundation for their admission in evidence by proving affirmatively such facts as will exclude the hypothesis that they are incompetent.    (12 Cyc., 481; Ency. L., 553-4; Ency. Ev., 329-30; Greenleaf's Ev., Sec. 219; Wilson v. State (Ala.), 4 So., 383; State v. Watt (Md.), 57 Atl., 544; Amos v. State, 83 Ala., 1; State v. Garver, 28 La. Ann., 925; People v. Soto, 49 Cal., 67.)    And if there is a reasonable doubt upon such preliminary proof, the defendant is entitled to the benefit of that doubt, and the confession must be excluded.    (Bram v. U. S., 168 U. S., 549; Ellis v. State, 88 Ga., 44; Williams v. State (Miss.), 16 So., 296; Green v. State, 88 Ga., 516; State v. Garver, 28 La. Ann., 925; Amos v. State, 83 Ala., 1; Wilson v. State (Ala.), 4 So., 383; Watts v. State (Md.), 57 Alt., 544.)    A confession, to be admissible in evidence, must proceed from the volition of the accused, in the sense that the motive which prompted the making of the statement must be the offspring of his own mind and conscience, instead of improper influences exerted by some other person; and, when questioned by the defense, the burden falls upon the prosecution to prove affirmatively such facts as will exclude the hypothesis that it was the direct or indirect result of any im-

proper inducement, or of any physical or moral restraint, coercion, compulsion or improper inducement of any kind. (2 Russ. on Crimes, 825-6; Ency. Ev., 30; Greenleaf's Ev., Sec. 219; 12 Cyc., 461; id., 528; Bram v. U. S., 168 U. S., 549; State v. Auguste (La.), 23 So., 613; Bomer v. State, 55 Ala., 425; State v. Jay, 116 Ia., 264; Simons v. State, 5 Fla., 285; State v. Alexander, 109 La. Ann., 557; State v. McCallum (Wash.), 51 Pac., 1045; People v. Mahon, 15 N. Y., 384.) The so-called confession, or the part of it which was admitted, was improperly admitted. The prisoner had been illegally arrested and detained without a warrant, which constituted a wrong against him, and rendered his detention illegal and void. (People v. McGrew, 77 Cal., 570; Barker v. Anderson, 81 Mich., 508; Kirbie v. State, 5 Tex. Cr., 60; Floyd v. State, 12 Ark., 43; Mitchell v. State, id., 50.) That fact should have been considered, as justifying the inference that the confession was not voluntary. (Hoober v. State, 81 Ala., 51; Greenleaf's Ev., Sec. 230; Ency. Ev., 305; 10 Ency. L., 321; Hatter v. Greelee, 1 Port., 222; Brown v. Guernsey, 51 Barb., 99.) The said arrest, and the false accusation of his supposed guilt of another crime, the taking him to Albany County to supposedly free himself from such charge, and his continued confinement there constituted a false imprisonment, and duress of imprisonment. (Potter v. Swindle, 77 Ga., 419; Burk v. Hawley, 179 Pa., 539.) In view of the nature of his imprisonment, and that a trap was laid for him by the officer's accusations, the confession should be regarded as made under duress of imprisonment. (Authorities cited, supra; State v. Davis, 125 N. C., 612; State v. Nagel (R. I.), 54 Atl., 1063; Ammons v. State, 80 Miss., 592; Hamilton v. State, 77 id., 675; West v. U. S., 20 App. D. C., 347; State v. Jay, 116 Ia., 264; People v. Gonzoles, 136 Cal., 666.)

*W. E. Mullen,* Attorney General, for the State.

The evidence introduced by the prosecution may properly be considered along two independent lines. First, there is

the testimony of Burney, an eye witness, which is corroborated by other facts and circumstances, and also by the admissions of guilt made voluntarily by the defendant himself. Second, the admissions and confessions of the defendant corroborated by the testimony of Burney, and other circumstances surrounding the case. The fact that the defendant had been seen around the store of the deceased, and had an opportunity of knowing his habits in keeping cash on hand at the store; the remarks of defendant made to the witness McLeod as defendant was leaving Hanna, to the effect that he, defendant, would have "some easy money in the morning"; the fact that he stopped at Laramie on the evening of January 19th, and left there the same night in company with witness Burney, we believe must be regarded as circumstances indicating guilt and strongly corroborative of the testimony of Burney, as well as of the admissions and confessions made by the defendant himself.

We think it is clearly shown by the record that what defendant said to Burney with reference to the killing of deceased was a free and voluntary statement, and was not made because of any hope or fear inspired by the officers present, or by hope of reward, but rather from a desire to get even with Burney for having given the officers information about the killing, and under a sense of provocation incited by Burney's remarks. Admitting that the circumstances of this meeting at the sheriff's office was a cleverly arranged plan on the part of the officers to get evidence, and to learn more facts about the Gerber murder, this would not render the statements made by defendant inadmissible, unless attended by circumstances which might induce the accused to make statements that were false. (Jackson v. U. S., 102 Fed., 482-3; Cornill v. State (Wis.), 80 N. W., 745-8; State v. Vaughn (Mo.), 53 S. W., 420; Commonwealth v. Cressenger (Pa.), 44 Atl., 43; People v. Mahon, 15 N. Y., 384.)

The fact that a confession was made by the accused while under arrest or in confinement, and to the sheriff, jailer,

constable or other officer having him in custody will not render it involuntary, so as to exclude it from evidence, unless there is proof that it was induced by hope or fear. (6 Ency. L. (2d Ed.), 536; Balbo v. People, 80 N. Y., 536; State v. Davis (Idaho), 53 Pac., 678.) There is no presumption of law that such confessions are induced by improper representations made to the prisoner. They are presumed to be voluntary unless the contrary is shown; hence the burden of showing that such confessions were involuntary rests upon accused. (Rufer v. State, 25 O. St., 470.)

A refusal to instruct that evidence of confessions are to be received with caution is not ground for reversal. (State v. Clump, 16 Mo., 385; State v. Hardee, 83 N. C., 619.) In the present case there was absolutely no inducement offered by promise or threat. The defendant was not obliged to answer Burney's accusation if he did not choose to. The case is clearly within the rule of admissibility. (Commonwealth v. Meyers, 160 Mass., 532.)

The court could not properly charge the jury that the witness Burney or any other person was in fact an accomplice, as that would be a question of fact to be gathered from the evidence the same as any other fact. (Dill v. State (Tex.), 28 S. W., 950; People v. Sansome, 98 Cal., 235; People v. Curlee, 53 Cal., 604.) But where the jury might infer from the evidence that a witness testifying in the case was an accomplice, an instruction with reference to the weight and character of such testimony is proper. (Arnold v. State, 5 Wyo., 439.) And the credibility of an accomplice when used as a witness for the State is, under the universal rule, a question for the jury to determine and exclusively within their province. (Moses v. State, 58 Ala., 117; Olive v. State, 11 Neb., 30; State v. Adams, 20 Kan., 311.)

The rule in all jurisdictions, except where it is otherwise provided by statute, is that a conviction may be had on the uncorroborated testimony of an accomplice. (Blashfield

Instr., Sec. 15.) We have no statute in this state requiring corroboration; therefore, when the court charged the jury that a person may be convicted upon the uncorroborated testimony of an accomplice, it announced a correct proposition of law. (State v. Crab, 121 Mo., 565; State v. Donnelly, 130 Mo., 643.) In view of the record in this case, however, this would appear to be an idle discussion of principles. The testimony given by the witness Burney as a matter of fact was amply corroborated, not only by the confessions and admissions of the defendant himself, but by other circumstances having an important bearing on the case.' (State v. Jackson, 103 Ia., 702; Com. v. Scott, 123 Mass., 222.)

Admissions and declarations against interest are received as evidence on the presumption that a person will not make an untrue statement against his own interest. This is the extent of the presumption. (People v. Borgetto, 99 Mich., 337; People v. Willis, 71 Conn., 306.) Instructions 15 and 16, given by the trial court relating to the presumption as to defendant's admissions against himself, has the approval of Blashfield in his work on Instructions to Juries (Sec. 232), and similar instructions have been upheld in the following cases: State, v. Curtis, 70 Mo., 594; State v. Van Sant, 80 Mo., 67; State v. Peake, 85 Mo., 190; Jackson v. People, Ill., 269. The Missouri cases of State v. Hudspeth and State v. Hollingsworth, cited by counsel for plaintiff in error, cover a different proposition.

The presumption that declarations and admissions made against interest are true, is well founded as a legal principle. There is nothing of a conclusive character about such a presumption, nor did the court indicate in the instruction itself that the presumption was conclusive. The court simply referred to the presumption of law which attends, under proper circumstances, the evidence of admissions and declarations made against interest.

The statements made by defendant Clay were voluntary. Whatever the motive of the defendant in making his ad-

missions of guilt, it is clear that they were not induced by any act or word of the officers who were present. His own consciousness of guilt, and a desire to bring the witness Burney into the case as deeply as he had become involved himself, probably accounts for his making a counter accusation. Burney, whom the evidence shows to have been exceedingly nervous and excited at the time, made no self-incriminatory admissions when defendant accused him of being "in the play," or with having been present and involved in the murder.

*Thomas H. Gibson,* for plaintiff in error, submitted a brief in support of his petition for rehearing, in which it was again argued and contended that the incriminating statement of the plaintiff in error admitted in evidence against him was inadmissible because made under duress and fear, caused by his imprisonment, and the improper influence upon him exerted through the accusation of the alleged accomplice, made in the presence of the officers, and as a result of the latter bringing the accomplice into the presence of the plaintiff in error under the peculiar circumstances shown by the evidence, and that such admission should be held, in this error proceeding, to have been erroneously admitted. Counsel cited, in addition to the authorities mentioned in his original brief, the following cases: People v. Barric, 49 Cal., 342; Green v. State, 88 Ga., 516; Kelly v. State, 72 Ala., 244; Sorenson v. U. S., 143 Fed., 820.

Scott, Justice.

The plaintiff in error, defendant below, was charged, tried and found guilty of the crime of murder in the first degree and sentenced to suffer the extreme penalty of the law.

From the record it appears that George Gerber, the decedent, was and had been for some time prior to the homicide engaged in keeping a store on Front street in the City of

Laramie. That he did not deposit his money in bank, but was supposed to keep it in the store, and it was generally known that he kept considerable money in coin and currency in a cigar box behind the counter and from which he made change as occasion required with his customers. During the month of December and the first two or three days of January preceding the homicide the defendant worked in and about the City of Laramie for a gentleman named Mann, and was seen on different occasions during the evening hours in the store, and on one occasion said to one of the witnesses that he had some money there and bantered the deceased to play poker with him, but deceased refused. Early in January the defendant went to Hanna on the Union Pacific railway west of Laramie.

There were three rooms to the store—the front room, where the miscellaneous stock of goods were kept, the middle one, which was used as a bed room by deceased, and the rear room, which was used as a storage room.

About noon of January 20, 1905, the store not having been opened, people in the vicinity became suspicious that something was wrong and called an officer, who with others forced an entrance by the rear door, the front door being locked, and thence to the middle or bed room. Here they found the covers of the bed on the floor and the mattress torn open. Passing from this room to the front room, they found the dead body of George Gerber lying in the alleyway behind the counter, and the feet doubled under. The body lay in a large pool of blood, and blood was spattered about and on the partition wall. There was one mark, apparently made by a heavy instrument, over the right eye, two bruises on the back of the head and several scratches on the neck; and also a knife sticking in the throat almost directly in front and to one side of the trachea. About three or four feet from the body were found two bars of iron which were quite bloody. The papers of the deceased were scattered about, and the cigar box in which he was known to have kept his money was on the floor in front of the

counter, and a pocketbook was found behind the counter opened, with nothing in it. The front door was locked and the window shades were down.

On the afternoon of the 18th of January the defendant, then being at Hanna, asked one of the witnesses to go east with him, and the next day, that being the day on which the homicide was committed, again requested this witness to go, saying that they would "have some easy money in the morning." This witness saw defendant leaving on the train for the east between twelve and one o'clock of that day. The same evening the defendant, together with the witness Dicey, were seen, recognized and talked with in a Chinese restaurant two blocks from the deceased's place of business, by the city marshal of Laramie, and they then said they were not going to stop, but were going out, and that they left that night, reaching Cheyenne in the early morning. The witness Dicey or Burney was also seen and recognized in deceased's store on the same evening, i. e., the evening of the 19th. Dicey or Burney testified as a witness on behalf of the State, that, after getting their supper at the Chinese restaurant, they went down the track to a point opposite the store of deceased, and prior to reaching that point the defendant and another man who was with him picked up two bars of iron, and that he, Dicey, went into the store and saw deceased was there, but there were customers there also, and he so reported to the defendant and the third man, whom he claims accompanied them in the box car, and who with defendant got into the same box car the first station east of Rawlins. That after he returned from the store Dicey says they waited until the deceased, being alone, started to lock up the store for the night. Then he says his associates in crime went into the front door and he saw them grapple with deceased, saw and heard the blows struck. Then there was silence and in a few minutes his associates emerged from the store with a hat full of money, which was divided between them, and they took the first train east.

1.   The defendant assigns as error the admission over his objection of the evidence as to what the defendant said in a conversation which took place at the sheriff's office in Laramie City between the defendant and the witness Dicey. It appears from the preliminary proof as to the admissibility of this evidence that Sheriff Smalley had the defendant in his custody in Cheyenne, and having suspicions that he was implicated in the crime from a confession and a description given by Dicey to the officers at Laramie City, told the defendant that he answered the description of one of three men who were wanted on a charge of murder committed at Joplin, Missouri, on December 31st, 1904.   Clay was asked by the sheriff if he could prove that he was not the man, and the defendant said he could do so, and thereupon gave the sheriff a detailed statement of his whereabouts from a little before Christmas to January 19th, the day on which Gerber was killed, and that he had during December worked in Laramie City for a Mr. Mann driving a dray.   In pursuance of this conversation, Sheriff Smalley, under pretense of having the defendant identified by Mr. Mann, but really to see if Dicey could identify him, took the defendant to Laramie City and to the Albany County sheriff's office, arriving at the office between nine and ten o'clock at night, where were Sheriff Reals, the under sheriff and jailer of Albany County.   Here in the presence of the persons named Sheriff Smalley spoke of the defendant answering the description of one of the men wanted in Joplin, Missouri, and again asked the defendant the name of the man for whom he said he worked in Laramie, and the defendant answered saying he had told him three or four times before.   Smalley then said to Sheriff Reals that he wanted him to keep defendant until the next day, as he wanted to see Mann, who ran the wood yard, and if he couldn't identify him he would have to take him to Hanna, and said, "By the way, Reals, you have a man in jail who can identify this man Clay." Thereupon the under sheriff and jailer went after Dicey. Up to this time, nor was there at any time any inducement,

threat, promise of reward or immunity from punishment held out to the defendant, nor is there any evidence that the confronting of the defendant by Dicey was brought about for any purpose other than to see if the latter could identify him, nor was any accusation as to defendant's guilt by Dicey advised or contemplated. The incriminating statement was made to an accomplice, to one who participated and assisted in the commission of the crime, and not to one in authority. The object and purpose of a preliminary examination of this kind is to determine whether the incriminating statements ought in any event to go to the jury; and if it clearly appears that they were made under a promise of· immunity from punishment, duress or by putting in fear, then they should be excluded. If, however, it appears that such statements were voluntary or the evidence is conflicting as to whether they were in fact voluntary, then in either event such statements should go to the jury, together with evidence of the facts and surrounding conditions at the time they were made, with instructions to determine their character, and if from the evidence the jury find that they were not voluntary, then to exclude them from their consideration; otherwise to consider them with the other evidence in the case and give them such weight as in their judgment they are entitled to. There was no error in permitting these statements to go to the jury, and they will be set out fully in the consideration of another branch of this case.

2. The court, over the objection of the defendant, instructed the jury that it was a question for them to determine from the evidence as to whether or not any witness who testified in the case was an accomplice. Prior to giving this instruction the court properly charged the jury as to what in law constituted an accomplice.

The question as to whether or not one is or is not an accomplice is one of fact and goes to the credibility of the witness and to the weight of his testimony. His attitude toward the case can only be shown by the evidence; and, though he may or may not be an accomplice, it is error in

either case to so charge, but not prejudicial or reversible, because it is favorable to the defendant, who cannot complain. The court followed the better practice, one that was eminently fair to both the State and the defendant, of giving the definition of an accomplice, leaving the jury free to find from the evidence whether or not any witness was an accomplice. (Bell v. State, 39 Tex. Cr. Reports, 677.) In Smith v. State, 10 Wyo., 157, the court instructed the jury that a certain witness was in law an accomplice, and having so instructed and fixed the status of the witness, this court held "that it gave the defendant the right to have his testimony treated as that of an accomplice in the charge of the court." That question is not here involved, for in this case the court nowhere assumed or instructed that any witness was an accomplice, but gave the usual customary instruction with reference to the evidence of any witness found to be such.

3. Over the objection of the defendant the court instructed the jury that the uncorroborated testimony of an accomplice was sufficient upon which to base a verdict of guilt if they were satisfied beyond all reasonable doubt of its truth. This instruction must be considered in connection with the evidence and also that the *corpus delicti* of the crime charged consists of, first, criminal homicide, and, second, the defendant's agency in the commission of the same. The former was clearly shown in this case independent of any evidence of the witness Dicey, conceding him to have been an accomplice. The criminal agency of the defendant as testified to by Dicey was corroborated by the criminating statements made by the defendant himself when confronted by Dicey for the purposes of identification in the Albany County sheriff's office. It thus appears that the State did not rely upon the uncorroborated evidence of an accomplice for a conviction. The instruction assumed that there was no corroborating evidence, when there was such evidence of a damaging nature, which the State was entitled to have go to the jury for their consideration, and

it was for them to determine its weight and sufficiency. It is true that they may give no weight to the corroborating evidence, but that is a question for them and not for the court. The rule in such case is that the jury should not be instructed that they may base their verdict upon the uncorroborated .evidence of the accomplice if they believe it to be true, unless explained and accompanied by other instructions, because such an instruction by implication excludes other evidence in the case from their consideration. Such an instruction standing alone would clearly be error when there is evidence tending to explain, contradict, or affecting the weight of corroborating testimony, and it would also be prejudicial, for it would inform the jury that they could predicate their verdict upon a part and ,not upon all of the evidence in the case. The defendant, however, is not in a position to complain of this instruction, for at his request the court instructed the jury that under the laws of this state a person accused of crime could be convicted upon the uncorroborated evidence of an accomplice, but that it was questionable if they should so convict, and "that it was dangerous to do so unless the testimony of the accomplice is corroborated by evidence tending to connect the accused with the crime charged, and there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime." This instruction was fully as broad and to the same effect as the one complained of, and it was further coupled with the usual caution in such a case. As to whether such evidence alone is sufficient to support a conviction was discussed by this court in Smith v. State, 10 Wyo., 157, but was not decided; nor do we, in view of the evidence, deem it necessary to here decide that question, for the defendant cannot be heard to complain of an instruction which states the law the same as the court states it in an instruction given at his request.

The instruction is further complained of in that it does not state to the jury what constitutes corroboration. It

says that the corroboration must be upon any material fact and it is urged that the jury were left to grope in the dark as to what constituted a material fact, and that the instruction is within the rule announced in Smith v. State, *supra.* It may be conceded that standing alone the instruction is open to that objection, but by defendant's instruction upon this phase of the case, already quoted from, the jury were told that "there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime." We think this fairly put before the jury what constitutes a material fact in this case upon which corroboration was necessary. The usual cautionary instructions as to receiving and weighing the evidence of one shown to be an accomplice were given and we think upon this question the instructions taken as whole fairly presented the law to the jury.

4. By the fifteenth and sixteenth instructions the court instructed the jury over the objection of the defendant that in any conversation proven by the State what the defendant said against himself the law presumed to be true, because against himself, but what he said for himself they were not bound to believe and they might treat the latter statements as true or false, just as they believed them to be, when considered with the other evidence in the case. The seventeenth instruction upon the same subject, also . objected to, is a little milder in language, for it tells the jury that they may believe that which charges the prisoner and reject that which is in his favor if they see sufficient ground in the evidence for so doing. The first two instructions are clearly erroneous as being upon the weight of the evidence, and the last instruction in connection with the former does not change, but accentuates rather than softens their effect. They are taken from State v. West, 69 Mo., 401, where the opinion expressly states that they are open to criticism. They were given and reluctantly approved in State v. Curtis, 70 Mo., 594, and later an instruction that if the jury believed that any statements of

the defendant had been proven by the State and not denied by the defendant, they should be taken as true, was by the same court held to be prejudicial error upon two grounds, viz: that it conveyed to the jury the idea that the duty was upon the defendant to disprove such statements, or, in other words, that it shifted the burden of proof to the defendant, and also that the court invaded the province of the jury and decided for them the weight of the evidence and the credibility of the witnesses. (State v. Hudspeth, 150 Mo., 12; State v. Hollingsworth (Mo.), 56 S. W., 1087.) In Welsh v. State, 96 Ala., 92, a verdict and judgment for murder in the first degree was set aside and reversed because the court instructed the jury that what the defendant said against himself in a conversation or statement introduced in evidence "the law presumes to be true because against himself." The court in passing upon the question says: "There is a sort of presumption of the truth of declarations against interest which the law adjudges as the basis of admissibility. * * * But it extends no further than this. When the office of the presumption has been performed, it ceases to exist. It no longer attends upon evidence when it was gotten before the jury. * * * The charge was an invasion of the jury's province, and should not have been given." The rule announced in this case and the later cases from Missouri already referred to seems to be the general and universally accepted rule. In 6 Ency. of Law, at page 580, it is stated that as a general principle after a confession has been introduced, and the same rule undoubtedly applies to a criminating statement, it is for the jury to determine its credit and weight in connection with all the facts and circumstances proved upon the trial. Numerous authorities are there cited in support of the text. The same rule is announced in Wigmore on Ev., Sections 2550 and 2551. At the request of the defendant the jury were instructed that they were the sole judges of the weight to be given to such statements, and unless they were entirely

satisfied to the exclusion of every reasonable doubt that they were made freely and voluntarily they should disregard them altogether. This in our judgment does not cure the error in giving the former instruction, for they are irreconcilable and the latter in no way destroys the effect of the former. The instructions considered together sent the incriminating statements to the jury with the erroneous presumption of their truth, a presumption that went only to their competency and admissibility and no further. The statements were made at the time the defendant was confronted by the witness Dicey for the purposes of identification, and the witnesses differ as to the exact language used by the defendant when Dicey came into the door of the sheriff's office where defendant was, and one says "pointed his finger at" and another says he "looked at defendant" and said, "You are the man that killed that old man," or, "You are the white nigger who killed that old man," or, "That's the white nigger that killed the old man." The defendant pointed his finger at Dicey and said, "Now, here, I was there, I was in on the play, but you are the man who done it," or, "No, you are the man. I stood outside while you did the work." It is unfortunate that these criminating statements were not treated as items of evidence to be considered and weighed by the jury together with and the same as the other evidence in the case in determining the issue. Conceding that the statements were made, they were but evidentiary facts and the defendant was not concluded thereby. They were not in the nature of solemn or judicial admissions made at the trial, but were extra judicial or *quasi* admissions. They did not amount to a waiver of proof and might be combatted, explained and their force destroyed either by direct evidence or the defendant need not offer evidence and might rely and take chances on what he deemed inherent weakness of the State's case. In such a case the defendant may hazard his life or liberty wisely or unwisely upon the State's evidence before the jury, or

upon errors of law occurring at the trial, and if he fails
in the former he does not thereby waive the latter.  These
instructions were upon the weight of evidence material to
the issue and practically upon the whole case, for, upon the
facts, whoever committed the homicide did so while in
the commission of the crime of robbery, and if both the
defendant and the witness Dicey were so engaged it mat-
tered not whether deceased came to his death at the hands
of the defendant, or of Dicey, or of both, for in law both
would be guilty of murder in the first degree as defined by
our statute.   (Sec. 4950, R. S. Wyo., 1899.)   The court
by telling the jury that these criminating statements were
presumed to be true invaded the province of the jury and
fixed their weight.  If the law presumed them to be true,
then the rendering of the verdict was a mere perfunctory
matter requiring no deliberation upon, weighing or con-
sideration of the evidence—an idea which does violence to
all teachings of the sacredness of the trial by jury where
the questions of credibility of the witnesses and the weight
of the evidence are exclusively for the jury, and the ques-
tions of law for the court.

It is seriously urged that, in view of the evidence, this
court should assume that the correct result has been
reached and decline to disturb the verdict and judgment.
In support of this contention the Attorney General calls
our attention to Miller v. State, 3 Wyo., 657.   In that
case there was practically a judicial confession.  The de-
fendant took the stand, at the close of the State's case, and
testified not only to taking the life of the deceased, but to
all the attending circumstances and the motive therefor.
Every element constituting the crime charged was sub-
stantiated by his evidence, thus in effect constituting a
complete waiver of defects, if any, in the State's proof;
and, further, it was impossible for his testimony to be true
and he be innocent.  The applicability of the rule there
laid down to this case in which the defendant did not
testify before the jury is apparent, and further comment
is unnecessary.

For the error in giving instructions fifteen and sixteen, the judgment will be reversed and the case remanded for a new trial. *Reversed.*

BEARD, J., concurs.

POTTER, C. J., dissents.

BEARD, JUSTICE (concurring).

We are all agreed that the District Court erred in giving instructions 15 and 16; but differ in our opinion as to the effect of such error upon the rights of the defendant, that is, whether or not it was error "affecting materially his substantial rights." By those instructions the jurors were told, in substance, that if they found from the evidence that the defendant had made any statements in relation to the commission of the homicide, that what he said against himself the law presumes to be true; but what he said for himself or in his own behalf they were not "bound" or "obliged" to believe; thus clearly and forcibly giving them to understand that they were bound and obliged to accept as true anything he said against himself. In other words, they were told, in effect, that if they found that defendant had said that he "was there" or "was in on the play," they were to take that as an established fact, whether they believed he was stating the truth or a falsehood. So far as this evidence was concerned, the defendant's presence at the place of and his participation in the commission of the crime were made by these instructions to depend, not upon the truth or falsity of his statements, but solely upon whether or not he had made them. This evidence went to the very essence of the crime; and, aside from the evidence that the defendant was seen in a restaurant in Laramie about 7 o'clock on the evening before the homicide, it was the only evidence corroborating the testimony of the witness Burney as to defendant's presence at the time and place of the homicide. The right to a trial by jury includes the right of the accused to have the weight of the evidence and the truth or falsity of any testimony

adduced, tested and determined by the jury. And if the jurors are not permitted to believe or disbelieve a material part of the evidence, as in their judgment is right, then a defendant has had a jury trial in name only. However, if upon the whole record it appears that the defendant was not prejudiced by the error, the judgment should not be reversed. But after repeated examinations of the record I have been unable to come to that conclusion. We cannot say that the jurors believed Burney and, therefore, must have based their verdict upon his testimony. It is much more probable that they found the statements testified to were made by the defendant, and finding them to have been made, followed these instructions and relied upon the presumption that they were true. The case is easily distinguished from Miller v. State, 3 Wyo., 657. There the defendant went upon the stand as a witness in his own behalf; his statements were made in open court, in the presence of the jury, under oath, and where he was represented by counsel. In my opinion to affirm this judgment would be for this court to pass *primarily* upon the weight of the evidence, instead of reviewing it for the purpose of determining whether or not it is sufficient to sustain the verdict. The jury was not permitted to determine its weight; and this court should not do so in the first instance.

As to what has been considered by some of the courts to be or not to be prejudicial error, I cite, but without commenting upon, the following cases: Perry v. State, 9 Ala., 83; Kirby et al. v. People, 123 Ill., 436; Cox v. People, 109 Ill., 457; Reynolds v. City of Keokuk, 72 Ia., 371; McCormick H. M. Co. v. Jacobson, 73 Ia., 546; Hausman v. Hansling, 78 Cal., 283; Cahill v. Murphy, 94 Cal., 29; Thacher v. Jones, 31 Me., 528; Lane v. Crombie, 29 Mass. (12 Pick.), 176; DuBois v. Perkins, 21 Ore., 189; State v. Security Bk., 2 S. Dak., 538; State v. Patton, 35 N. C., 421; Atwood v. Welton, 57 Conn., 514; Livingston v. M. E. R. Co., 138 N. Y., 76; Graves v. Camp-

bell, 74 Tex., 576; Blindbental v. Street Ry. Co., 34 Mo. App., 463; Carter v. Wakeman, 78 Pac., 362; Lynch v. People, 79 Pac., 1015; Weller v. Hildebrandt, 101 N. W., 1108.

For these reasons, in addition to those stated in the opinion of Mr. JUSTICE SCOTT, I concur in that opinion and in reversing the judgment of the District Court.

POTTER, CHIEF JUSTICE (dissenting).

I regret that I am unable to give my assent to the conclusion reached by a majority of the court in this case. My dissent is based solely upon the proposition that instructions numbered 15 and 16, relative to the legal presumption as to statements made by the defendant against himself, were not prejudicial. I agree that the instructions, in the respect mentioned, were erroneous, and that under different circumstances they might have been highly prejudicial; but I can perceive no reasonable ground for holding, upon the record in the case at bar, that the defendant was in any degree prejudiced thereby, or that he was, in effect, denied as to any material fact in the case the right to a jury trial by reason of the giving of such instructions.

The only statement of the defendant which could be affected by the instructions referred to was that he was there, or "was in on the play," which was made, if at all, when he was suddenly and unexpectedly confronted in the sheriff's office by the alleged accomplice, Burney, and with the latter's accusation that the defendant was the person who had killed the "old man." It was left to the jury to determine whether the defendant's statement so made had reference to the homicide charged in this case, or whether he made the statement at all or not, since those questions were not taken from the jury by the instructions complained of or any other instruction given in the cause.

Assuming that the jury may have found the statement to have been made, and that it had reference to the homi-

cide in question, and they were warranted in so finding, it stood out in the evidenec as a statement of a fact not only undisputed by any testimony in the case, but consistent with all the other facts and circumstances shown by the evidence. . It was of course the technical right of the jury to pass upon the truth of the statement itself, and to say that they would either believe or disbelieve it; and in practically eliminating the question of its weight from their consideration, by the instruction that it was presumed to be true, the trial court erred. But I do not think that such error amounted to a denial of the right of jury trial in legal effect or otherwise. Nor in my opinion must such an error be regarded as necessarily prejudicial. Whether such an instruction is prejudicial or not must depend, as it seems to me, upon the facts and evidence in the case as disclosed by the record.

Taking the statement as made, and as admitting the defendant's presence at the time and place of the homicide, or his connection with it to the extent mentioned in the statement, as it is related by one or more of the witnesses, the fact so stated was not contradicted by any testimony, nor is it improbable, nor inconsistent with any other circumstance brought out in the evidence. Burney testified that the defendant was not only present when the homicide was committed, but that he actively participated in its commission, and the other facts are consistent with that testimony, though their tendency for the purpose of corroboration is perhaps slight. I cannot conceive, therefore, of any reasonable ground upon which the jury could have been persuaded to disbelieve the undisputed statement aforesaid of the defendant; and I am not convinced that this appellate court should assume that the jury would or might have found the defendant's statement to be untrue, in disregard of the other uncontradicted evidence, and in the absence of any contradiction or attempted contradiction of the truth of the statement itself, merely because a jury has the legal, though not the moral, right to disregard all

the evidence, or to disbelieve any and all the evidence submitted to them, whether there is a reasonable ground therefor or not. There are doubtless decisions of respectable courts seeming to sustain such a proposition; but unless brought within proper limitations the doctrine may lead to unreasonable if not absurd results. It occurs to me that to assume that the jury in the case at bar might have found that the defendant spoke falsely in making the statement attributed to him, which statement was neither improbable, nor contradictory of any other fact in the case, and stood undisputed, is to assume that they might have acted arbitrarily, without regard to their oaths, or the evidence in the case. This I am unwilling to do.

In Bressler v. The People, 117 Ill., 422, Mr. Justice Schofield, delivering the opinion of the court, said: "It has often been said by this court, and its correctness is obvious, although it might never have been said, that whether, in a given case, there should be a reversal for error in giving an instruction, depends quite as much upon the evidence before the jury to which the instruction might be applied, as upon the abstract accuracy of the language of the instruction; and so, if it is apparent that the language of the instruction, though inaccurate, yet, when applied to the evidence before the jury, it could not have misled the jury to believe that their duty was different from what it actually was, the inaccuracy can afford no reason for reversal."

In the case of Dent v. State, 65 S. W., 677, the appellant was charged and had been convicted with being an accessary to the crime of murder; and the Texas Court of Criminal Appeals declined to reverse for error in instructing the jury that certain record evidence was conclusive proof of the conviction and guilt of the principal instead of *prima facie* proof. The court said in the opinion: "But in view of the fact that appellant introduced no evidence, we are then confronted with the proposition as to whether the error of the court was calculated to injure the rights of

appellant. We have searched in vain for a distinction between evidence that makes out a *prima facie* case that is uncontroverted and a charge to that effect, and a charge that says said evidence is conclusive. If the jury in this case had been told by the court that the records were *prima facie* evidence of the guilt of Isaacs (the principal), could there be any controversy over the fact that they would have concluded under the evidence before them that defendant was guilty? We think not. Then certainly, under the mathematical aphorism that 'things that are equal to the same thing are equal to each other,' we think it can be accurately stated that this charge was not calculated to injure the rights of appellant."

The charge in the Missouri case of State v. Hudspeth, referred to in the opinion of the court in this case, was not the same as in the case at bar. There the charge complained of was that if the jury believe any statements of the defendant have been proven by the State, and not denied by defendant, they are taken as true. The distinction I think is apparent. That instruction made it incumbent upon the defendant to personally deny the statements attributed to him; and other proof tending to show their falsity would not be sufficient; and it would seem that the defendant would be required under that instruction to personally deny making the statements, or the fact that he made them could not be disputed, or disbelieved, however improbable or inconsistent with the other evidence, the fact might be. That the Missouri court did not regard the instruction considered in the Hudspeth case as upon the same footing with the instructions in the case now before us is apparent from the absence in the opinion of any reference to the several previous cases in the same court refusing to reverse for the giving of the identical instructions here complained of. I shall briefly refer to a few of them.

In State v. Van Sant, 80 Mo., 67, though the case was reversed on other grounds, an instruction like that in the case at bar was held to be unobjectionable. In State v.

Talbott, 73 Mo., 347, the same instruction was upheld, and a conviction for murder in the first degree sustained. In that case the court said, in reference to this instruction: "The fifth instruction is not a comment on parts of the evidence, but a proper enunciation of the law in relation to statements made by defendants as has been repeatedly held by this court," citing State v. Hallenscheit, 61 Mo., 302; State v. Hays, 23 Mo., 287; State v. West, 69 Mo., 401; State v. Curtis, 70 Mo., 594. The same instruction was again sanctioned in State v. Peak, 85 Mo., 190. It is hardly conceivable that these cases were overlooked in deciding the Hudspeth case; on the contrary, in the absence of reference to them in the opinion in that case, it would appear more likely that they were regarded as not involving a similar proposition. Moreover, the character of defendant's admissions in the Hudspeth case, and whether controverted in any manner or not is not disclosed. In the more recent case of State v. Coleman, 186 Mo., 151, an instruction that what the proof may show, if anything, that the defendant has said against himself, the law presumes to be true because said against himself, was apparently conceded to be erroneous; but the court refused to reverse on that ground for the reason that, as there was no evidence of any such statements, the error was not prejudicial. I quote the following from the opinion in that case covering the said instruction:

"Conceding that there was no evidence upon which to base the instruction, we are not inclined to think the judgment should be reversed on that ground. Certainly this could not be done unless the error was prejudicial to defendant, and while the presumption is that an error made against a defendant when on trial for crime is prejudicial, this presumption may be overcome by the facts and circumstances in evidence if sufficient, and we can but conclude from the facts disclosed by the record that the error was not prejudicial. In fact, we are unable to see in what way defendant was prejudiced, and we are of the opinion that he was not; hence the error was not prejudicial."

ON PETITION FOR REHEARING.

BEARD, JUSTICE.

This case was decided June 26, 1906, and plaintiff in error has filed a petition for rehearing. There is but one point presented by the petition, and that point was fully presented and argued at the hearing, and was considered and determined in the opinion handed down. The brief filed in support of the petition is but a reargument and presents nothing which was not considered. A rehearing is denied.                                *Rehearing denied.*

SCOTT, J., concurs.

POTTER, C. J., being absent, did not sit.