## SMITH v. STATE.

CRIMINAL LAW—LARCENY—EVIDENCE—ACCOMPLICE—CORROBORATION OF ACCOMPLICE—INSTRUCTIONS—EXCEPTIONS—MOTION FOR NEW TRIAL.

1. Where a witness for the State in a criminal case testified that he assisted in the crime under direction of his employer, defendant on trial, but made no claim of coercion or fear, was treated throughout the trial by the prosecution as an accomplice, and so declared to be in the charge of the court; and, according to his own admission and that of the prosecuting attorney, testified under promise of immunity from prosecution, it was the right of the defendant to have his testimony treated, in the instructions to the jury, as that of an accomplice.

2. Where in a criminal case an accomplice having testified as a witness for the prosecution inculpating the defendant on trial, the court charges the jury that it is their duty to convict if the evidence given by the accomplice is corroborated upon any material fact, it is the duty of the court, when a proper instruction is requested on the subject by the defendant, to instruct the jury what will constitute such corroboration.

3. In a prosecution for the larceny of a steer the statement by an accomplice to officers of the place near defendant's home

where the hide and brand were hidden, and the fact that they were found in the place so designated, does not alone constitute corroboration of the testimony of the accomplice as to defendant's connection with the crime.

4.  The court having in this case, a prosecution for the larceny of a steer, charged the jury that they should convict the defendant upon the testimony of an accomplice sworn as a witness for the State, if the same was corroborated upon any material fact, it was error to refuse an instruction requested by defendant that the fact that the accomplice had stated to the officers the place near defendant's home where the hide and brand were hidden, and they were there found, was not corroboration of the testimony of the accomplice as to defendant's connection with the crime, unless accompanied by other independent facts and circumstances in addition to the testimony of the accomplice.

5.  It is not necessary to state in a motion for new trial that the acts or rulings of the court therein assigned as grounds for new trial were at the time excepted to. It is sufficient that the motion set out the acts and rulings relied on as reasons for new trial, and that the bill of exceptions shows that exceptions thereto were at the time reserved.

[Decided February 11, 1902.]

ERROR to the District Court, Converse County, HON. RICH-ARD H. SCOTT, Judge.

James Smith and Lewis Smith, two brothers, were jointly informed against for the larceny of live stock. James was acquitted and Lewis was convicted. Together with Thomas Black, they were working on a ranch, Black being under the direction of Lewis Smith, as he testified. Black was the principal witness for the State, and testified that the animal in question was killed by the Smith brothers, that James shot at the animal first and wounded it, and that Lewis shot at and killed it. The witness assisted Lewis Smith, as he testified, in driving in the steer from the range. He testified further that the defendant, Lewis Smith, cut out the brand and cut off the ears of the animal and buried them. It was claimed by the prosecution that until this was done Black had no suspicion that a crime was being committed. The defendant, Lewis Smith, made a motion for new trial, which

was overruled, and he brought the case here on error. The other material facts are set forth in the opinion.

*F. H. Harvey* and *C. F. Maurer,* for plaintiff in error.

The court seems to have instructed the jury that they might convict on the uncorroborated testimony of the accomplice. It may be true that it rests within the power of a jury to so convict; but the court should not so instruct them. On the contrary, they should be instructed that they should not convict on such uncorroborated testimony. (Underhill Crim. Ev., 73; Allen v. State, 10 O. St., 305; 1 Greenleaf Ev., 380; Lindsay v. People, 63 N. Y., 154; 1 Ency. L., 399; McNeally v. State, 5 Wyo., 69.) Many states have adopted statutes expressly forbidding a conviction on the unsupported evidence of an accomplice. The admonition of experience, as demonstrated by such statutes, is that the common law rule was not stringent enough to conserve the ends of justice; and our courts ought not adopt a rule of practice which, instead of following in the wake of the humane and liberal legislation aforesaid, actually takes from the common law rule whatever efficacy it may have had. The finding of the hide and brand where the witness Black reported them to have been hidden did not amount to corroboration. (McNeally v. State, 5 Wyo., 69.) The ranch on which the hide, head, &c., were found belonged to one Mrs. Merrill and was her home. At the time they were found Lewis Smith was not in possession or in charge of the ranch. Clearly there is no ground for the contention that recently stolen property was found in his possession.

*W. F. Mecum,* County and Prosecuting Attorney, and *J. A. VanOrsdel,* Attorney General, for the State.

The witness Black, under the evidence, was not what is known in law as an accomplice. The evidence discloses that, although he was present at the time the steer in question was killed, he did not suspect that a crime had been committed until after the steer had been killed and the brands cut out.

The crime in this case was the stealing of the animal in question. There is no evidence of any intent on the part of Black to commit this crime, nor even guilty knowledge of the commission of the crime. The fact that he afterwards assisted the defendant in burying the head and horns is not, we think, such an act as would make him an accessory after the fact. Certainly, upon the evidence disclosed by the record, he was not the principal nor a partner in the crime to the extent of becoming an accessory. One who is merely present at the commission of a crime, but in no way aids or participates therein, is not an accomplice. (Allen v. State, 74 Ga., 769; Lowry v. State, 72 Ga., 649; State v. Reader, 60 Iowa, 527; State v. Cox, 65 Mo., 290.)

The jury are the sole judges as to whether or not Black was an accomplice. This fact is one to be found by the jury, and neither the trial court nor an appellate court will presume to deprive the jury of their prerogative in this matter, and arbitrarily declare the witness Black an accomplice in the commission of the crime charged. It is hardly necessary to cite authorities in support of this proposition. "If there is evidence tending to show that a witness is an accomplice, the question whether he is an accomplice or not must be submitted to the jury as a question of fact." (Enc. Law, 2d Ed., Vol. 1, p. 293, and cases cited.)

From an examination of the evidence, as disclosed by the record in this case, it will be found that the testimony of the witness Black was corroborated in a number of ways. It was corroborated by the accurate description of the place where the head, hide and brands could be found, and where they were found afterwards by the officers; by the defendant's possession of the meat, his keeping it locked in a building to which he alone carried the key; by his using and consuming it without accounting in any way for such possession; by defendant trying to lay the crime on the witness Schwartz, and by misrepresentation and falsehood trying to influence Schwartz to leave the country; by the proof that only Lewis and James Smith and the witness Black were on the ranch

on the day the steer was killed; by the admission of the co-defendant James Smith that he was present at the ranch on the day the steer was killed, and at the same time testifying that he knew nothing of the transaction; by the actions of James Smith when he was arrested, as detailed in the testimony, by officer Cook. (8 Gen. Dig., p. 1109; Unsell v. State, 45 S. W., 902; State v. Kennedy, 55 S. W., 293; State v. Calder, 59 Pac., 903 (Mont.); Wilkerson v. State, 57 S. W., 956.) The jury had a right to convict on the uncorroborated testimony of an accomplice. (State v. Kennedy, 55 S. W., 293; Lawhead v. State, 65 N. W., 779; People v. Nunn, 79 N. W., 800; State v. Horner, 41 Atl., 139; State v. Kennedy, 154 Mo., 268; Sackett Instr., 480; Roscoe Crim. Ev., 129.) It is usual for the trial court to instruct the jury that they should require corroborating evidence to convict, but the verdict is lawful, even though the testimony of an accomplice is uncorroborated.

.The instructions as given correctly stated the law on the subject. The case of McNeally v. State, 5 Wyo., 69, is not applicable, as there the court had instructed the jury that certain evidence was strong corroborating evidence.

Corn, Justice.

The defendant, Lewis Smith, was convicted of the larceny of a steer. The case for the prosecution depended upon the testimony of an accomplice, Thomas Black, and it is claimed there was error in the charge of the court touching the duty of the jury in considering his testimony.

The court, at the request of the State, gave to the jury four instructions upon the subject, as follows:

"1. It is claimed on the part of the defense that Thomas Black, one of the State's witnesses, is an accomplice in the crime; therefore, the court will instruct you upon the subject of an accomplice. An accomplice is defined as one who is associated with others in the commission of a crime, all being principals, and the test in general to determine whether a witness is or is not an accomplice is the inquiry; could the

.witness himself have been indicted for the offense either as principal or as accessory? The question of whether a witness is an accomplice or not is for the jury to determine.

"2. Should you find the said Thomas Black to be an accomplice in the crime, and also find that his testimony is corroborated by some other evidence which tends to confirm his testimony upon a point material to the issue, in the sense that it tends to prove the guilt of the defendant, and if it appears that the said Thomas Black has testified to the truth in some material particular, the jury may infer that he has in others.

"3. The credibility of an accomplice is a question for the jury, as is that of any other witness, and you have a perfect right to accept it or reject it, in part or in toto. Such evidence, however, coming as it does from a polluted source, should be received with great caution and closely examined. It is proper for you to consider whether his testimony is prompted by a promise of leniency or a hope of reward, or as a means of obtaining revenge for a supposed injury. Yet, if, notwithstanding any of these motives, you find there were such, you believe he speaks the truth, and such evidence is corroborated upon any material fact, you should find the defendant guilty.

"4. You are instructed that the witness, Black, is in law what is known as an accomplice. You are further instructed that an accomplice's testimony should be received with care and scrutiny, owing to the fact that where the State relies upon the testimony of an accomplice for conviction there is an implied agreement to extend immunity to such accomplice by reason of his giving testimony; yet you are instructed that if you believe beyond a reasonable doubt that the testimony given by the said Black is true, that you have a right, upon such evidence, to find the defendants, or either of them, guilty, whether the testimony of such accomplice be corroborated or not."

These were all the instructions given concerning the duty of the jury in acting upon the testimony of an accomplice.

The defendants requested the following, which was refused: "The jury are instructed that in a prosecution for the larceny of an animal, being the fiddleback steer involved in this trial, an accomplice's testimony is not corroborated as to defendants' connection with the crime by his having stated to officers the place near defendants' home or abode where the hide and brand were hidden; and the fact that such hide and brand were found as stated by the accomplice, Black, unless accompanied by other independent facts and circumstances in addition to the testimony of the accomplice, Black, is no corroboration of the accomplice's testimony."

Plaintiff in error, who, for the sake of convenience, is spoken of as the defendant, and his brother, James, were informed against and tried together, James being acquitted by the jury. Black testified that on January 8th, 1900, he and defendant drove a steer of Mrs. Tillotson into the corral at the Merrill ranch, where they were employed; that both Lewis and James had their guns, and that James shot the steer first, but failed to kill it, and that Lewis then shot and killed it; that the meat was locked up in the granary, the brands cut out and they and the hide buried and concealed. Black quit his employment and left the ranch about February 20th, some six weeks after the alleged larceny, and reported the circumstances to the prosecuting attorney. There is evidence that there was bad feeling between him and the defendant, and that he threatened to get square. James Smith had been in the town of Douglas for two or three months, staying at the hotel, on account of a broken leg. He and the defendant and four other witnesses, who had no interest in the result of the trial, so far as appears from the record, testify that he and defendant left the hotel in a buggy for the ranch, some fifty-five miles distant, on January 6th, two days prior to the alleged larceny. They all state that he had to be helped into the vehicle and could not walk or stand without the use of two crutches. Another witness testifies that they stayed with him the night of the

6th at the Brown Spring ranch and left for the Merrill ranch on the morning of the 7th. And he makes the same statement as the others as to the crippled condition of James. He also says that James was again at the Brown Spring ranch on the 13th, and that he had to help him in and out of the buggy. The prosecution fix the date of the alleged larceny, with care and with apparent certainty, by reference to a fact stated by Black that on that day the mail coach stopped at the ranch, having a passenger, named Richard Flynn. Both the proprietor of the mail line, who had entered Flynn's stage fare in his books, and Flynn himself testify that that day was the 8th of January. In the light of the testimony of these five witnesses, therefore, as to the crippled condition of James Smith, it seems highly improbable that he could have taken the active part in the killing of the steer detailed by Black.

But it is a matter of yet more serious consideration that this evidence tends to prove that both Lewis and James Smith were absent from the ranch on the 4th, 5th and 6th and until late in the afternoon of the 7th, and that Black was in possession, either alone or in company with Harry Schwartz, who also about this time left the ranch in anger— or as Black expressed it, "They had a kind of a row and he quit them to come to town." Lewis testifies that, having returned to the ranch on the 7th, he left again on the morning of the 8th and did not return until about noon of the 10th; that, after his return, he went to the granary and, seeing the beef, said to Black, "Hello, you have got meat," and Black said, yes, he had killed a 2-year-old; that, naturally supposing it to be an animal belonging to Mrs. Merrill, he said no more about it. James says that, as nearly as he can remember, the first time they had beef at a meal was the evening of the 8th.

Under the case made by the prosecution, therefore, fixing the date as the 8th of January, there is quite an array of evidence showing that, for some four days prior, both Lewis and James Smith were absent and the ranch in possession of

Black, either alone or in company with Schwartz. This afforded them ample opportunity to kill the animal, store the meat in the granary and secrete the hide and brands, without the knowledge of defendant or his brother; and six weeks afterwards, when ill feeling had arisen between them, to charge the crime to defendant and his brother, and at the same time have in hand full and minute information of the secreting of the hide and brands and where they could be found, in order to establish the perpetration of the offense.

Under these circumstances, it was necessary that the jury should be correctly and accurately informed as to the principles which should govern their consideration of this character of evidence. They were instructed that they had a right to find the defendants guilty upon the testimony of the accomplice, whether corroborated or not. No doubt a jury may convict upon the uncorroborated testimony of an accomplice, for the reason that there is no law of this State which forbids it, and the court would not be authorized by a peremptory instruction to direct an acquittal as in a case where no evidence was produced by the State connecting the defendant with the crime. But it is questionable if the jury have a "right" to find a defendant guilty of a felony upon such uncorroborated testimony, and the authorities are uniform that they ought not to do so. Greenleaf says: "Judges, in their discretion, will advise a jury not to convict of felony upon the testimony of an accomplice alone and without corroboration; and it is now so generally the practice to give them such advice that its omission would be regarded as an omission of duty on the part of the judge. And, considering the respect always paid by the jury to this advice from the bench, it may be regarded as the settled course of practice not to convict a prisoner in any case of felony, upon the sole and uncorroborated testimony of an accomplice." (Greenleaf Ev., Sec. 380.) And many of the states have adopted statutes forbidding it.

It is not necessary in this case, however, to determine whether the omission to so advise the jury is reversible

error, for the court also charged the jury that if they believed the accomplice spoke the truth and his evidence was corroborated upon any material fact, they should find the defendant guilty. This was a positive instruction that it was their duty to convict if there was corroboration upon any material fact, and it was the duty of the court to inform the jury what constituted such corroboration; certainly when a proper instruction upon that subject was requested by the defendant. This court in McNeally v. The State, 5 Wyo., 69, in terms decided that the fact that the accomplice may have told the truth as to the location of the hide and brands of the animal feloniously killed, and conducted the officers to the spot where they were, did not inculpate the defendant, nor did the fact that they were found on his premises a short distance from his dwelling; and that these things were not a corroboration of the testimony of the accomplice. The principle is emphasized in this case where the evidence tends to show that both of the defendants were absent from the place for several days just prior to the alleged time of the killing of the animal, giving full opportunity to the accomplice and others to perpetrate the offense and conceal the evidences of it, without the knowledge or complicity of the defendants. The jury might well understand that these things were the corroboration which made it their duty to find the defendants guilty under the court's instructions, and we think the refusal to instruct them, as requested, was error and clearly prejudicial to the defendant.

It is urged by the Attorney General that Black was not, in contemplation of law, an accomplice, as he testified that he was simply acting under the directions of Lewis Smith, as his employment required. But he made no claim that he was coerced or in fear. And, moreover, he was treated by the prosecution throughout the trial as an accomplice, was so declared to be by the court in its charge to the jury and by his own admission and, substantially, that of the prosecuting attorney, he was testifying under a promise of immunity from prosecution. This gave the defendant the

right to have his testimony treated as that of an accomplice in the charge of the court. (Com. v. Desmond, 5 Gray, 80; Barrara v. State, 42 Tex., 260.)

Some objection is made that the exceptions of the defendant relating to the giving or refusing of certain instructions were not preserved in the motion for a new trial, so as to properly present them to this court for review. But an examination of the record discloses that, in the motion, the giving of certain instructions over defendant's objection and the refusal of others requested by him are assigned as reasons why a new trial should be granted and an exception preserved to the overruling of the motion. This was sufficient. It was not necessary to incorporate into the motion a statement that these acts of the court were at the time excepted to. The bill of exceptions shows affirmatively that exceptions were at the time reserved to the giving of the instructions complained of by plaintiff in error.

The judgment will be reversed and the case remanded for a new trial.                                      *Reversed.*

POTTER, C. J., and KNIGHT, J., concur.