THE STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

H. H. CALLAWAY,

*Defendant and Appellant.*

(No. 2611; March 9th, 1954; 267 Pac. (2d) 970).

For the defendant and appellant the cause was submitted upon the brief and also oral argument of W. A. Muir of Rock Springs, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Howard B. Black, Attorney General, Paul T. Liamos, Deputy Attorney General, James L. Hettinger and Robert A. McKay, Assistant Attorneys General, all of Cheyenne, Wyoming, and John S. Mackey, County and Prosecuting Attorney of Pinedale, Sublette County, Wyoming. Oral argument by Mr. Mackey.

512

514

## OPINION

HARNSBERGER, Justice.

The appellant was tried and convicted under Section 9-317, Wyoming Compiled Statutes, 1945, which reads as follows:

"Whoever buys, receives, conceals or aids in the concealment of anything of value, which has been stolen, taken by robbers, embezzled or obtained by false pretense, knowing the same to have been stolen, taken by robbers, embezzled or obtained by false pretense, shall, if the goods are of the value of twenty-five dollars or upwards, suffer the punishment prescribed for grand larceny, and if the goods are worth less than twenty-five dollars, shall suffer the punishment prescribed for petit larceny."

The information charged that defendant did "* * * wilfully, unlawfully and feloniously receive, conceal and aid in the concealment of the carcass of one Hereford cow, branded Bar Cross, $\overline{+}$ , on Left Ribs, of the value of $250.00, said carcass of said Hereford cow branded Bar Cross, $\overline{+}$ , on Left Ribs, having been stolen from the Bar Cross Land & Livestock Company, a Wyoming corporation, and the said H. H. Callaway knowing at the time of receiving, concealing and aiding in the concealment of the carcass of said Hereford cow that the same had been stolen." The jury's verdict found the defendant guilty as charged and ascertained and declared the value of the property received by the defendant to be $250.00. Direct appeal to this court has

been taken by the defendant from the judgment and sentence pronounced upon that verdict.

Before the trial a defense motion to suppress certain evidence obtained without search warrant was sustained and a demurrer to the information was overruled and appellants say this was reversible error in that the information fails to allege or set out the name or names of the persons who stole the property in question; that it does not allege a felonious taking of the property by the persons supposed to have stolen the same and that it does not allege the time or place of the larceny.

In Curran v. State, 12 Wyo. 553, 76 P. 577, this court held that in charging the crime of receiving stolen property, the name of the thief was immaterial and that it was unnecessary either to allege the name of the thief or that the name of the thief was unknown. Furthermore, the court announced that the material facts are (1) the receipt (2) of goods which have been stolen, and (3) knowing them to have been stolen. See also 45 Am. Jur., Receiving Stolen Property, 384, 385, Sec. 2. The essential elements of the crime which render its fruits "stolen property", were not included by the court as material facts required to be alleged in an information charging the commission of the statutory substantive crime of receiving, concealing and aiding in the concealing of something of value which has been stolen, knowing the same to have been stolen.

Ordinarily it is sufficient that the information charge a statutory crime substantially in the language of the statute, although as in McGinnis v. State, 16 Wyo. 72, 91 P. 936, 944, it was recognized "* * * that that rule has no application as to a common-law crime, where the statute has defined it in generic terms, but that in such case the information or indictment would be insufficient in merely following the statute. * * *"

But our statute is not couched merely in generic terms, it fully, directly, expressly and without any uncertainty or ambiguity, sets forth all of the elements which this court has said are necessary to constitute the offense intended to be punished. Counsel has cited State v. Hall, 27 Wyo. 224, 194 P. 476, as supporting his position in demurring, but we cannot follow his reasoning. All we find in that case is that Hall was prosecuted under a penal statute requiring the owner or controller of sheep that had been dipped in accordance with law, to file an affidavit showing that fact. The information failed to state that the sheep in question had been dipped, in the absence of which fact, no crime would have been committed. For this reason, the demurrer to the information was sustained.

We see no reason to change or modify the holding in Curran v. State, supra, nor was it necessary for the information to allege a felonious taking of the property by the persons supposed to have stolen the same or to allege the time and place of the larceny.

The appellant insists he was prejudiced by the court's admission of evidence relating to the head, hide, udder and legs of the animal from which the state claimed the carcass in question was taken, and by the admission in evidence of these exhibits. From the authorities the appellant submits, we might surmise he suggests these exhibits were too gruesome and tended to inflame the jury, or we might conclude his contention is that these items were not sufficiently identified or connected with the defendant and the crime charged. We think there is little, if any, merit in either case.

The court unquestionably has a reasonable discretion which it may exercise in determining whether such exhibits are too gruesome or inflammatory and, unless this prerogative is manifestly abused, this court will not interfere.

The relevancy, the materiality and the connection of these exhibits with the crime informed against is so patent when considered in connection with testimony showing the exhibits corresponded to parts of the very animal which the state claimed was the animal whose carcass had been stolen and unlawfully received and, together with other testimony relative to the killing of such an animal, its being dressed out, of similar parts having been buried by the thieves at the place where the exhibits were discovered, and the identity of the brand on the hide with the brand of the company which the information stated to be the owner of the stolen property, all coupled with the positive identification of the exhibits by one of the thieves and many other similar details, that it seems unnecessary to further discuss the matter.

Certain evidence in behalf of the state was given by witnesses who produced and identified the hide, head, udder, and legs of a two year old cow, the hide bearing a brand known as the Bar Cross, shown as $\overline{+}$ , and other evidence proving that this brand belonged to the Bar Cross Land and Livestock Company, a Wyoming corporation of which company one Norman Barlow is the manager, the treasurer and a director. Testimony also showed these parts of a cow were found buried on the Lookout Mountain range in Sublette county, Wyoming, where Mr. Barlow ran the cattle belonging to his company, and where the remains of such a cow had been placed by the two young men who had killed it. Mr. Barlow testified to the corporate existence of the Bar Cross Land and Livestock Company and that the approximate value of the animal in question was $250.

An important witness for the prosecution was one of two young men, who at the time had been employed by the defendant and lived at the Middle Butte Ranch where the defendant and his partner resided and oper-

ated a "dude" business. This testimony shows that sometime around 8:00 o'clock P.M. on the evening of July 1, 1952, the witness and the other employee left the defendant's ranch in a pick-up truck intending to hunt for wild game; that as they were about to leave, the defendant said to them "Don't come home without the liver;" that at a place some seven or eight miles from the ranch these employees shot and killed a two year old cow with a .22 high powered rifle belonging to the defendant, dressed out the cow, cut it in half, buried the entrails, head, hide, udder and feet, loaded the halves of the carcass into the pick-up and drove the "long way" back to the defendant's Middle Butte Ranch, arriving between 11:00 o'clock P.M. and 1:00 o'clock A.M. that night. They went to the washhouse to clean up when the defendant came there and asked what they had gotten. When he was told they had a moose the defendant said, "I don't believe you," whereupon defendant was told they had in fact killed the cow. When the place of the killing was described to the defendant, he said "That is a pretty poor place to get it because it is bad to hide it there." Later when asked where the meat was to be put, the defendant said, "Bring it up to where we can wash it off," and defendant then got a hose, connected it to the water line and turned on the water to wash off the meat and the truck. The defendant also said something about hanging the meat out and that if somebody found it they would be in trouble over it. The defendant and one of the employees got in the truck and brought the meat out and quartered it with a meat saw, which the defendant produced, after which the meat was taken into the cookhouse, placed on the floor. and the defendant and the employees cut it up into chunks and put it in the deepfreeze. During this time the witness said, "Well, I reckon if we get caught, this is it," and the defendant replied, "No, I have skinned out a few myself

and you boys haven't done nothing I haven't done or wouldn't do myself." It was also stated during this conversation that the cow was Barlow's because he was the only man that runs cattle on Lookout Mountain where the cow was killed.

The only other evidence which is of much importance at this time was given by a neighbor of the defendant, who said he went to the Middle Butte Ranch at 6:30 o'clock on the morning of July 2, 1952, to use the 'phone; that while telephoning he saw the defendant go to the deepfreeze and open it; that the deepfreeze was full of meat; that the defendant punched the meat a couple of times with his hand; that the witness asked the defendant if he punched the meat to see if it was frozen; that the defendant closed the lid and went back into the kitchen. It does not appear that the question of the witness was answered.

The court is said to have erred in not striking the testimony of a state's witness that the defendant told the witness "he had skinned out a few himself and hadn't been caught yet and we hand't done nothing that he wouldn't do or hadn't done." Counsel says there are numerous authorities which hold such evidence to be inadmissible, but that he does not care to cite them. This is unfortunate for appellant, as it leaves us unconvinced that there was any error in the admission of that testimony.

Appellant says there was error in permitting the manager who was also an officer and director to testify as to the corporate existence of the Bar Cross Land and Livestock Company. In the first place there is some question as to whether or not any objection was made to the testimony.. What took place is best shown by quoting from the record:

"Q. What is your occupation?

"A. Ranching.

"Q. Do you operate your own ranch?

"A. I am manager of the Bar Cross Land and Livestock Company.

"Q. What is the legal status or entity of the Bar Cross?
BY MR. MUIR: Objected to as not proper proof of a corporation's existence.

"A. It is a Wyoming corporation authorized to do business in the State of Wyoming.
BY MR. MUIR: Just a moment! We object to this testimony, if the Court please. That is not the way to prove a corporation.
BY MR. NELSON: He is the manager of it. He ought to be entitled to testify to the legal entity.
BY THE COURT: He might not know anything about the legal status.
BY MR. NELSON: Do you know what the legal status of the Bar Cross Land and Livestock Company is?

"A. Yes.

"Q. What is it?

"A. It is a livestock and land operation—a corporation.

"Q. Is it a Wyoming corporation?

"A. It is a Wyoming corporation.

"Q. You are the manager of that corporation?

"A. I am manager and treasurer.

"Q. You are then a director of the corporation, is that it?

"A. I am.

*   *   *"

Thus, it will be seen that without a ruling having been made on the objection made to the previous question as to the legal status or entity of the Bar Cross Land and Livestock Company, and without any objection being made to substantially the same question when it was asked after the witness had testified that he did know the company's legal status, the witness was permitted to say that the Bar Cross Land and Livestock Company was a Wyoming corporation of which the witness was the manager, treasurer and a director.

Furthermore, no motion to strike the testimony was made.

In addition, it seems that corporate existence may be proved by just such testimony. See 20 Am. Jur., Evidence, p. 255, § 267; 23 C.J.S., Criminal Law, p. 194, § 921; 14 C.J., Corporations, p. 175, § 180, 16 C.J., Criminal Law, p. 614, § 1205, 22 C.J.S., Criminal Law, p. 1190, § 695; Edelhoff v. State, 5 Wyo. 19, 36 P. 627.

The most difficult question we are called upon to decide is whether the thief, without whose testimony in this case the conviction cannot be upheld, was an accomplice of the receiver of the stolen property and, if so, whether in this jurisdiction such testimony must be corroborated or whether a cautionary instruction must be given the jury relative to their consideration of the same.

As to the first query, there is undoubtedly a sharp division of authority. While Wharton's Criminal Evidence, Vol. 2 (Eleventh Edition) p. 1248, § 741, points out that a majority of the courts have held a thief is not an accomplice of the receiver of stolen property, an examination of the authorities there listed shows that eleven states so hold as against nine states to the contrary. In each group are some of our western states.

In 45 Am. Jur. 402, 403, § 17, it is said:

"The question whether one guilty of the larceny of personal property is to be regarded as an accomplice of one who criminally receives it, knowing it to be stolen, must frequently be determined where it is sought to convict the receiver on the testimony of the thief and it must be ascertained whether the rules relating to accomplice testimony are applicable. There is a division of authority upon this question. Whether the thief is such an accomplice is ordinarily tested either by the inquiry whether he has taken a guilty part in the commission of the crime with which the receiver is charged, or by

a determination of whether he could himself be indicted for the offense, either as principal or accessory.

"In many jurisdictions it is held that these questions must be answered in the negative, and that as a rule, the stealing of the property by one person and the receiving of it, knowing it to be stolen, by another, do not, without more, constitute the thief an accomplice of the receiver. There is, however, increasing recognition among these authorities of an exception under which the thief is held an accomplice of the receiver in cases where an agreement existed between them prior to the larceny for one to steal and the other to receive the property. On the other hand, the courts in an apparently increasing number of jurisdictions reach a contrary result from the application of the general tests, sometimes by reason of statutes broadening the definition of principals and accessories in crime, and take the view that one who steals the property is an accomplice of one who receives it from him with knowledge that it is stolen. Included in the group so holding are several courts which maintain the position that the receiver is not an accomplice as to the theft."

And in the annotations on the subject in 111 A.L.R. 1400, under the caption "View that corroboration is required—thief testifying against receiver", it is noted:

"Courts in an apparently increasing number of jurisdictions take the view that in a prosecution for receiving stolen property the thief is an accomplice of the defendant, so as to necessitate corroboration of the thief's testimony. * * *"

and there is listed as included in the group which so hold, the states of Alabama, New York and Utah. Of these three states, Alabama is the only one which was not included among the nine states cited by Wharton, as above noted, so numerically the score at present seems to be eleven states holding the thief is not an accomplice and ten holding he is. Of course, this indicates nothing more than that as yet there has been no sound or logical reasoning advanced which has found

general acceptance in the minds of the host of learned judges who have struggled with the question.

Having in mind the reference in American Jurisprudence to the possible influence of statutes which broaden the definition of principals and accessories in crime, we quote our own applicable statute, Section 9-114, Wyoming Compiled Statutes, 1945:

"Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, and may be indicted, informed against, tried and convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted or indicted or informed against; and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

If literal acceptance be given to the meaning of the word "Every" in this statute, then all persons without exception, and including the thief, would become accessory to the crime of receiving stolen property, if such person actually gave aid or abetted in the commission by another of that crime and, being such an accessory, could be informed against, tried and convicted in the same manner as if he were a principal. Yet, the statement most frequently found in those decisions which hold that a thief is not an accomplice of the receiver of stolen property, is that the thief cannot be convicted of the crime of receiving stolen property because the larceny and the receiving of the stolen property are different crimes. Vol. 2, Wharton's Criminal Evidence, 1248, 1249, § 741. Other courts say it is because the thief cannot receive from himself. See People v. Lima, 25 Cal. (2d) 573, 154 P. (2d) 698, 700.

It has also been said that the reason why a thief cannot be an accomplice of the receiver of stolen prop-

erty, is because intent is a necessary element of that crime and that there can be no intent to unlawfully receive something which the thief already possessed. This reasoning seems insufficient under a statute such as ours because, as in this case, by committing the acts which constituted him an accessory to the defendant's crime of unlawfully receiving the stolen property, the thief did not himself receive the property but, in fact, parted with it. The criminal intent necessary to make one an accessory to the crime here charged lies not in a criminal intent that the accessory knowingly receive the stolen property, but in the criminal intent to give aid and to abet another in that other person's commission of that substantive crime.

It may be that some of the earlier cases holding the thief cannot be an accomplice, were so decided under circumstances where it was being claimed that the thief was an accomplice even though he was not such a party to the transaction of receiving the stolen property as would bring him within the purview of our accessory statute and thus there resulted the too broad pronouncement that a thief cannot be an accomplice to the receiver of stolen property, without limiting that statement to cases where the thief was not guilty of other subsequent acts in connection with the commission of the further crime of receiving the stolen property.

In Vol. 2, Wharton's Criminal Law, p. 1551, § 1234, after stating that it is elementary that where the larceny of the defendant is proved, the charge of receiving fails, because there can be no guilty reception unless there is a prior stealing by another, it is said:

"As an elementary principle, if larceny by the defendant be proved, though the offender appear only to be a principal in the second degree, the charge of receiving falls, because the offenses are substantially distinct,

and because there can be no guilty reception unless there be a prior stealing by another. But this reasoning fails, when on an indictment for receiving, proof transpires to show that the defendant was also an accessory before the fact. The offenses are so distinct that one cannot be said to merge in the other, nor is conviction of the one in any way incompatible with conviction of the other. Hence, in defiance of such testimony the defendant, if there be sufficient evidence of guilty receiving, may be convicted of such receiving."

This amounts to saying, that even though the receiver be subject to conviction for larceny by reason of his being an accessory before the fact to that crime, such a conviction would not bar his conviction of the further crime of unlawfully receiving the stolen property if there was sufficient evidence of his unlawful receiving of the same.

So also, it may be said, that if in addition to having stolen the property, the thief by his subsequent acts becomes an accessory to the further crime of receiving the stolen property, the two separate crimes do not become merged nor would the conviction for the theft save the thief from conviction as an accessory to the substantive crime of receiving the stolen property.

76 C.J.S., Receiving Stolen Goods, p. 18, § 14-b., similarly says it is elementary law that the thief cannot be convicted of receiving the stolen property, but at page 20 makes the following qualification:

"* * * however, one who steals personal property and sells it to another may, under a proper state of facts, be considered an accomplice of the buyer of the stolen property."

While it is possible to draw small distinctions between an accessory and an accomplice, for the purposes with which we are here concerned, we consider them as being the same. See 1 Words and Phrases, (Permanent Edition) 237 et seq., and 431 et seq.

The important thing to consider in this case is, whether the testimony of the thief is to be considered on a different plane than the testimony of any other witness in the case. We are not concerned with whether or not the thief may also be convicted of the crime of unlawfully receiving stolen property except as his being so subject to such conviction establishes him as a person whose participation in the transaction which is charged as constituting another the unlawful receiver of stolen property, makes it probable that through motives of fear, hope, revenge, etc., he may be tempted to color, enlarge or even to fabricate his testimony, in furtherance of his own ulterior purposes.

At different times this court has had occasion to speak concerning the necessity of corroboration of the testimony of accomplices, but so far it has not been said distinctly that a conviction may not be had solely upon the uncorroborated testimony of an accomplice. I nMcNealley (McNeally) v. State, 5 Wyo. 59, 67, 69, 70, 36 P. 824, 826, 827, 828, the trial court commenced an instruction with the statement " 'If, from all the evidence, the jury believe that the witness Henry Bierman was an accomplice of the defendant in the crime charged, they should not convict the defendant upon his testimony alone; * * *' ". The balance of the instruction contained matter which the court held to be prejudicial to the defendant and the case was reversed, but disapproval of the above quoted portion of the instruction was not expressed, although the following comment was made "* * * While it is not clear that in this jurisdiction a conviction on the unsupported testimony of an accomplice may not be sustained, as there are authorities based upon the strongest of reasoning that the jury may, if they please, act upon the evidence of an accomplice, notwithstanding the turpitude of his conduct, the general rule would prevail that it is the

duty of the court to advise the jury not to convict upon such testimony alone, and without corroboration. * * *" Then, the court said "* * * We do not care to lay down the strictest rule known, as to the absolute necessity of the presence of testimony corroborating the accomplice in order to warrant a conviction, nor as to the quantum of such confirmatory evidence, as it is not necessary to do so in the determination of questions presented in this case. * * *"

In Smith v. State, 10 Wyo. 157, 165, 67 P. 977, 979, it was said "* * * No doubt a jury may convict upon the uncorroborated testimony of an accomplice, for the reason that there is no law of this State which forbids it, and the court would not be authorized by a peremptory instruction to direct an acquittal as in a case where no evidence was produced by the State connecting the defendant with the crime. But it is questionable if the jury have a 'right' to find a defendant guilty of a felony upon such uncorroborated testimony, and the authorities are uniform that they ought not to do so. * * *"

To relieve this statement of a seeming contradiction or at least some possible ambiguity, it might be taken to mean that while the jury has a legal right to convict upon such uncorroborated testimony, they should not do so.

In Clay v. State, 15 Wyo. 42, 60, 61, 86 P. 17, 19, 20, an instruction to the jury containing the statement "* * * that the uncorroborated testimony of an accomplice was sufficient upon which to base a verdict of guilt, if they were satisfied beyond all reasonable doubt of its truth. * * *", was discussed in connection with the evidence in the case and in conjunction with another instruction which was given at the request of the defendant to the effect "* * * that under the laws of this

state a person accused of crime could be convicted upon the uncorroborated evidence of an accomplice, but that it was questionable if they should so convict, and 'that it was dangerous to do so unless the testimony of the accomplice is corroborated by evidence tending to connect the accused with the crime charged, and there should be evidence tending to show that the defendant was engaged and took part in the actual commission of the crime.' * * *", but again the court declined to definitely decide whether a conviction could be had in this state upon the uncorroborated testimony of an accomplice.

In State v. Baish, 32 Wyo. 136, 140, 230 P. 678, the jury was instructed as follows:

" '* * * You are further instructed that while it is a rule of law in this State that a person may be convicted of a crime by the uncorroborated testimony of an accomplice, still the jury should always act on such testimony with great care and caution, and should subject it to careful examination in the light of all the other evidence in the case; and the jury ought not to convict upon such testimony alone unless, after a careful examination of such testimony, you are satisfied beyond all reasonable doubt of its truth and that you can safely rely upon it; and if you are not so satisfied, then you should not convict the defendant unless you believe the testimony of the witness McCarthy to be corroborated by other and credible evidence tending to connect the defendant with the theft of the automobile alleged to have been stolen.' "

While it is true that only the first part of this instruction was criticized by the appealing defendant as being contrary to the law announced in Clay v. State, 15 Wyo. 42, 61, 86 P. 17, 19, to the effect that "* * * the jury should not be instructed that they may base their verdict upon the uncorroborated evidence of the accomplice, if they believe it to be true, unless explained and accompanied by other instructions, because such an

instruction by implication excludes other evidence in the case from their consideration. * * *", the affirmance of the judgment served to give approval to the instruction given.

In State v. Alderilla, 37 Wyo. 478, 482, 483, 263 P. 616, 617, this court voiced no criticism of the only instruction on the subject of accomplices and corroboration which had been requested and was given as follows:

" 'The evidence of the witness Frank Bromley shows that he was an accomplice of the defendant in the commission of the crime charged against the defendant. You are instructed that the testimony of an accomplice should be received by you with great caution, and you ought not to convict the defendant of the crime charged upon the testimony of an accomplice alone, unless it is corroborated by other credible evidence tending to show that the defendant is guilty of the crime charged in the information.' "

In comment this court said "We have in this state no statute requiring corroboration of the testimony of an accomplice in a case of this kind, but in a proper case the jury is always warned of the danger of convicting without such corroboration. * * * If, after a proper caution by the judge, the jury nevertheless convict the defendant, we doubt the authority of this court to set aside the verdict merely on the ground that the accomplice's testimony was uncorroborated. * * *"

Finally, in State v. Vines, 49 Wyo. 212, 234, 237, 238, 54 P. (2d) 826, 833, 834, it was said:

"* * * We have no statute, and there is no rule of the common law, that forbids a conviction on the uncorroborated testimony of an accomplice, but by a rule of practice it is the duty of the court to advise the jury not to convict upon such testimony. * * * The reason for the rule is the supposed promise or hope of conditional immunity. This supposition is clearly justified in the case at bar. * * *"

The opinion observes that the duty of the appellate court in passing on the sufficiency of the evidence in such a case is not easy to determine. It, however, reaffirms that appellate courts will not disturb a jury's findings on the facts approved by the trial judge's refusal to set the verdict aside, if there is any substantial evidence to support the same, and concludes (p. 834) :

"* * * In spite of the recognized danger of acting on the uncorroborated testimony of an accomplice, we have no doubt that such testimony may constitute what we call 'substantial evidence.' See State v. Alderilla, supra. In at least one case we have said that there must be 'substantial credible evidence' to support the verdict. Jones v. State, 26 Wyo. 293, 299, 183 Pac. 745. In that case a defendant charged with larceny was convicted on the testimony of a witness who it was claimed was an accomplice. Because the witness was of bad character, and his improbable story was contradicted on material matters, it was held that his evidence was neither substantial nor credible, and the verdict was set aside. The decision in that case would seem to be authority for a similar disposition of the case at bar. * * *"

But later on (p. 834, 835) the court said:

"* * * It is not necessary to decide that the judgment in the present case should be reversed on the sole ground that the jury should not have believed Reel's (the accomplice's) testimony that appellant participated in the crime. * * * " (parenthesis supplied)

In the case now before us, neither the defendant nor the state requested any instruction relative to accomplices or respecting their testimony and the court did not of its own volition give any such instruction although it was the testimony of the thief who so aided and abetted the defendant in the alleged commission of the crime charged as to constitute him an accessory under our statute and hence an accomplice, which alone imputed to the defendant the knowledge that the meat received by him was stolen property.

If we are to require observance of what this court in State v. Vines, supra, has said is a "rule of practice", then we must say that the trial court failed in its duty to advise the jury not to convict upon such testimony unless the same was corroborated, for though the crime here under consideration is far less grave than the murder charged in State v. Vines, the reason given for the rule as there stated, is also present here. The witness was the confessed thief of the stolen property and had pleaded guilty to its larceny. The hope of securing favorable treatment was undoubtedly present although he had at the time of testifying already been paroled. The record also suggests there was possible the motive of revenge because the defendant had not assisted the witness in his effort to be released on bond while the witness was being held in jail upon the charge of larceny.

While we cannot say that there is any precedent to be found in any of this court's earlier decisions for holding that a defendant may not be convicted upon the uncorroborated testimony of an accomplice, we do find that this court has been consistent as well as in substantial agreement with the appellate courts of most jurisdictions, in strongly indicating that where the testimony necessary to convict is given by an accomplice without corroboration, the trial court must advise and caution the jury as to the danger attendant upon their accepting the same as sufficient to convict.

If, then, the judgment of conviction in this case is to stand, and if we are to uphold what has previously been held, it will be because we now decide that although it may appear as it does in this case, that the accomplice's testimony alone supplied the evidence necessary to convict the defendant and it thereupon became the duty of the court to properly instruct and caution the jury as indicated by the decisions of this court, the failure of

the court to discharge its duty to so instruct, does not amount to reversible error.

However, when courts, including our own, in obvious recognition of the danger that innocent persons may easily be convicted upon such uncorroborated testimony and, with the apparent approval of appellate tribunals, have imposed upon themselves the "duty" to give juries proper cautionary instruction, it would seem strange if we were to now conclude that the neglect or disregard of that "duty" is not reversible error. We are not so disposed.

We do not overlook that the state maintains the necessary corroboration of the thief's testimony is to be found in the testimony of the neighbor who, while telephoning from the defendant's telephone, saw the defendant lift up the door of the deepfreeze and punch the meat several times. This act of the defendant is entirely consistent with his innocence of guilty knowledge that the meat was stolen. All of the evidence, including that of the state and its chief witness, agreed that the original purpose was to go hunting for wild game and, of course, it was the contention of the defendant that he understood the meat that was brought in and placed in the deepfreeze was moose meat. No one testified to the contrary, except the thief accomplice. While it may have been reprehensible for the defendant to have seemingly countenanced the wrongdoing of the thieves' taking game out of season, by being a party to the keeping of game meat in his deepfreeze, this improper conduct cannot justly be said to impute to him the knowledge that the meat was the carcass of a two year old cow stolen from the Bar Cross Land & Livestock Company as charged in the information.

We find no merit in the appellant's charge that there was a fatal variance between the information and the

proof concerning the name of the corporate owner of the cow in question. The position of the appellant in this respect is somewhat vague and uncertain, but we understand the criticism is based upon the fact that in the information the owner's name is written as "Bar Cross Land & Livestock Company, a Wyoming corporation," while the name of the company should in fact have been written as the "Bar Cross Land and Livestock Company, a Wyoming corporation." The point is not well taken. See Pickens v. The State, 58 Ala. 364; Lorah (Loraw) v. Nissley, 156 Pa. 329, 331, 27 A. 242; Schulze v. Light, Tex. Civ. App., 143 S.W. (2d) 200, 202; Brown v. State, 16 Tex. Court of App., 245, 248; Stewart v. State, 137 Ala. 33, 34 So. 818, 821; Commonwealth v. Clark, 58 Mass. (4 Cush.) 596, 597; Molton v. State, 29 Tex. App. 527, 16 S.W. 423.

The appellant challenges the court's instruction defining the word "carcass", which is as follows:

"You are instructed that Webster's New International Dictionary, Second Edition, defines the word 'carcass' as follows: 'The trunk of a slaughtered animal, after the hide, head, limbs, edible organs, and offal have been removed; the dressed body.'"

Appellant says the instruction is "no doubt proper" but that, in this case, "carcass" means "the body of an animal when dead", citing as authority the case of Whitson v. Culbertson, 7 Ind. 195, 196. Appellant also cites The New Century Dictionary, which defines "carcass" as "'the dead body of an animal.'" The importance of the proper meaningn of the word "carcass" is primarily concerned with the jury's understanding of the testimony of the manager of the owner company as to the value of the stolen property received by the defendant. Mr. Barlow, the owner's manager, testified that the approximate value of "this animal" was $250, and his was the only evidence about the value of the

property stolen. The jury's fixing of the value of the stolen property at $250 indicated they considered the value of "this animal" testified to by Mr. Barlow, to be identical with the value of the "dressed body" of the animal. If this were the only point upon which a reversal was being sought, we would be disposed to give the matter considerable study. In the present circumstance, however, we deem it sufficient to say that the certainty of the evidence, as specifically applying to the value of the property charged to have been stolen, is somewhat questionable.

Lastly, we take note that it appears from the record that the two men who killed and stole the cow in question, both pleaded guilty and both were paroled. One testified in behalf of the state and against the defendant, while the other testified in behalf of the defendant and against the state. While the thieves were both paroled, this defendant was sentenced to the penitentiary upon his conviction of the crime of receiving the fruits of the larceny. The considerations which moved the court to so dispose of these matters are not in the record, and we must assume, and we do assume, that the learned judge acted with circumspection and justly as he viewed the matter, yet these facts do not relieve this court of its duty to require that all persons accused of crime are accorded all of the protection to which the law entitles them. We believe that under the law of this state, the defendant was entitled to have the jury properly instructed with respect to the consideration which they should give to the uncorroborated testimony of the thief who, as an accessory before the fact, became an accomplice of the defendant in the commission of the crime for which the defendant was being tried. With such an instruction it may be that the jury would still have returned its verdict of guilty, but with-

out the instruction, we cannot say that the defendant had a fair and impartial trial.

Because of what has been said, the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded for a new trial.*

BLUME, C. J. and RINER, J. concur.