Steve WHEELER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–45.

Supreme Court of Wyoming.

Dec. 5, 1984.

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Craig W. Rossi, Student Intern, Wyoming Defender Aid Program, Laramie, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Roger Fransen, Asst. Atty. Gen., for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Appellant appeals from the judgment and sentence rendered on a jury verdict which found him guilty of delivery of a controlled substance (cocaine) in violation of § 35–7–1031(a)(i), W.S.1977. Appellant argues that (1) the trial court erred in refusing to consider the purchaser of the controlled substance as an accomplice and instructing the jury accordingly, (2) the trial court erred in permitting the introduction of the cocaine and test results inasmuch as the quantity of the remaining cocaine was insufficient for additional tests by appellant, and (3) plain error resulted from remarks in the closing argument of the prosecuting attorney.

We affirm.

## ACCOMPLICE

Bill Witt was arrested and charged with delivery and possession of controlled substances. The charges were dropped in exchange for Witt's testimony against appellant; Witt testified that appellant had sup-

plied him with the cocaine. Appellant offered, and was refused, the Wyoming Pattern Jury Instruction (WPJIC 2.104) on testimony of an accomplice.[1] Appellant objected to such refusal. The pattern jury instruction reflects the status of the law on testimony of an accomplice. *Ostrowski v. State*, Wyo., 665 P.2d 471 (1983); *Phillips v. State*, Wyo., 553 P.2d 1037 (1976); *Miller v. State*, Wyo., 508 P.2d 1207 (1973); *Pike v. State*, Wyo., 495 P.2d 1188 (1972); *Filbert v. State*, Wyo., 436 P.2d 959 (1968). The issue here does not concern the propriety of the instruction itself, but only whether or not there was evidence to warrant the instruction, i.e., was Witt an accomplice?

■ An accomplice, or an accessory before the fact is a person who knowingly aids or abets in the commission of a felony, or who counsels, encourages, hires, commands or procures a felony to be committed. See § 6–1–114, W.S.1977, as in force at time of the incident, and see Ch. 75, § 2, Session Laws of Wyoming 1982, and Ch. 171, § 1, Session Laws of Wyoming 1983.

■ Mere presence at the time and place of the crime and acquiescence in the criminal conduct does not make one an aider and abettor, but rather active participation or encouragement in the crime and a corresponding intent to accomplish the same criminal end as the principal is needed. *Haight v. State*, Wyo., 654 P.2d 1232, 1240 (1982). To be convicted of aiding and abetting the commission of a substantive offense, it must be proven that someone committed the substantive offense and that the person charged as an aider and abettor associated himself and participated in the accomplishment and success of the criminal

venture. *Haight v. State, supra,* 654 P.2d at 1238; *Goldsmith v. Cheney,* 447 F.2d 624, 628 (10th Cir.1971); *Nye & Nissen v. United States,* 336 U.S. 613, 618–619, 69 S.Ct. 766, 769–770, 93 L.Ed. 919 (1949).

Appellant cites us to no authority, Wyoming or otherwise, for the proposition that the buyer of controlled substances is the accomplice of the seller. He notes that an accomplice is one who could have been indicted for the offense, either as a principal or as an accessory before the fact. *State v. Vines,* 49 Wyo. 212, 54 P.2d 826, 832 (1936); *Smith v. State,* 10 Wyo. 157, 67 P. 977 (1902).[2] Other jurisdictions, while construing substantially different accessory statutes, have also developed the test for determining whether the acts of a participant in a crime constitute those of an accomplice as: Whether or not the participant could also be charged with the identical offense as that committed by the principal. *State v. Castro,* 32 Wash.App. 559, 648 P.2d 485, 489 (1982); *State v. Hallett,* Utah, 619 P.2d 335, 337 (1980); *State v. Berg,* Utah, 613 P.2d 1125, 1126 (1980); *Nunley v. State,* Okl.Cr.App., 601 P.2d 459, 462 (1979); *State v. Kasai,* 27 Utah 2d 326, 495 P.2d 1265, 1266 (1972); *State v. Fertig,* 120 Utah 224, 233 P.2d 347, 348 (1951). This test is a means of ascertaining the fact of complicity; it does not matter whether such participant is actually charged with the same offense, but whether he could be so charged. This is essentially the same test we used in *State v. Callaway, supra* fn. 2, 267 P.2d 970. There we said, at page 974 of 267 P.2d:

"'* * * Whether the thief is such an accomplice is ordinarily tested either by

1. The offered instruction reads:
"An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent and who could be charged with the same offense as the defendant, as accessory before the fact. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However,

the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.
"You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that unsupported testimony beyond a reasonable doubt."

2. For purposes of the law dealing with the corroboration of the testimony of an accomplice, an "accessory" means the same as an "accomplice." *State v. Callaway,* 72 Wyo. 509, 267 P.2d 970 (1954).

the inquiry whether he has taken a guilty part in the commission of the crime with which the receiver is charged, or by a determination of whether he could himself be indicted for the offense, either as principal or accessory.' "

■■■ Appellant argues that Witt, the buyer of the cocaine, was in fact charged with the violation of the same statute as appellant, i.e., delivery of a controlled substance, § 35–7–1031(a)(i), supra, prior to making a "deal" with the state. The record shows that this is true; however, that charge arose out of a completely different transaction from the one with which we are here concerned. The mere fact that a buyer of narcotics turns around and sells them to someone else, thereby bringing himself within the delivery statutes, does not make him an accomplice of the original sale made to him. There is a definite distinction between a seller and a buyer. Their separate acts may result in a single transaction, but the buyer is not aiding the "selling act" of the seller and the seller is not aiding the "buying act" of the buyer. The buyer and seller act from different poles. They are not in association or confederacy. An accomplice is one who participates in the same criminal conduct as the defendant, not one whose conduct is the antithesis of the defendant, albeit the conduct of both is involved in a single transaction.

■■■ Wharton's Criminal Evidence (13th ed. 1973) tells us that a purchaser of narcotics is not an accomplice of the defendant charged with selling such narcotics, Id. Vol. 3, § 648, pp. 360–361, and we so hold. The purchaser of controlled substances commits the crime of "possession" and not "delivery," and, thus, is not an accomplice to a defendant charged with unlawful distribution. *State v. Berg, supra.* The trial court was correct in not giving the requested instruction on accomplices.

## TEST RESULTS

During the search on Witt's residence, approximately ⅛ of a gram of a substance believed to be cocaine was seized. Two tests were conducted on the substance at the police station, and a further test was conducted by the Federal Drug Enforcement Administration Laboratory Services in San Francisco. The defendant filed a motion for independent testing of the substance which the court granted. However, after the three tests only ¹⁄₁₀₀ of a gram of the substance remained. Appellant, during trial, objected to the introduction of the cocaine and the laboratory test results into evidence, claiming "[d]ue process grounds that the State has failed in its duty to preserve evidence for Defendant's testing." The objection was overruled.

■■■ The United States Supreme Court held, in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed. 215 (1963), that:

" * * * [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

However, there is no showing whatever that the cocaine was not made available to appellant for testing. The record reflects that the prosecution informed the court during the arraignment proceedings that they maintained an open file policy, meaning that the defense was free to see everything in the prosecution's file. The court granted an order

"that upon return of the alleged controlled substance herein involved from the DEA Laboratory, the County Attorney shall cooperate and coordinate with the defense attorney to permit analysis by an independent testing facility."

There is no showing that such was not done. Further, some of the cocaine was retained—¹⁄₁₀₀ of a gram—and admitted into evidence at trial. There is no showing in the record that appellant attempted and was not able to have the remaining cocaine independently tested; there is no evidence that a test could not be conducted on the ¹⁄₁₀₀ of a gram. There is nothing in the record to support appellant's counsel's

statement that the State failed to preserve evidence for the defendant's independent testing.

█ We can not take judicial notice of the quantity of a substance required for testing to prove or disprove its identity as cocaine. The defense did not present expert testimony or other evidence that the remaining amount of cocaine was too minuscule to test. There is nothing in the record to substantiate appellant's contention on this point. But, even had the defense established the fact that the amount of cocaine was too small for testing, a recent ruling of the United States Supreme Court indicates that appellant's due process rights would not have been abridged. In *California v. Trombetta*, — U.S. —, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the United States' Supreme Court recently ruled that the due process clause does not require law enforcement agencies to preserve breath samples of suspected drunk drivers in order for results of breath analysis tests to be admissible in criminal prosecutions. Although that case involves the preservation of breath samples, much of that said there is applicable here.

In *California v. Trombetta, supra,* law enforcement officers used a device known as an Intoxilyzer to measure the concentration of alcohol in the blood of motorists suspected of drunk driving by analyzing said motorists' breath. The officers had the capacity to preserve breath samples for independent testing by defendants, but as a matter of course did not do so. The Court reviewed the law on prosecutor's duty to turn over exculpatory evidence. It went on to say:

"We have, however, never squarely addressed the Government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants.   * * * "
Id. 104 S.Ct. at 2533.

The Court reasoned that (1) the evidence presented at trial was not the breath, but rather the Intoxilyzer results obtained from the breath samples, (2) the breath samples were not destroyed in a calculated effort to circumvent the disclosure require-

ments established by *Brady v. Maryland,* supra, and (3) the policy of not preserving breath samples was without constitutional defect, because the constitutional duty must be limited to evidence that might be expected to play a significant role in the suspect's defense, i.e., be material.

This requirement of materiality is only met when the evidence both has an exculpatory value evident prior to the evidence being destroyed and is such that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions were met in the Trombetta case; the exculpatory value was low in light of the fact that a review of the Intoxilyzer and the California testing procedures leads one to conclude that the chances are extremely low that preserved samples would be exculpatory, and, if the test results are inaccurate so that the breath samples would be exculpatory, there are alternative means of attacking the reliability. These alternatives include demonstrating how the Intoxilyzer might malfunction, such as faulty calibration, extraneous interference with machine measurements and operator error.

The same is true in the case at bar. If the defendant had performed an independent test and the results indicated that the substance was not cocaine, this would only cast doubt on the credibility and accuracy of the State's test results. There are alternative ways to achieve this same result, such as the use of expert testimony and by cross-examination of State's witnesses. The trial court was correct in refusing to suppress the introduction of the test results and the cocaine.

### CLOSING REMARKS

█ Appellant contends that during the closing argument the prosecutor committed prejudicial error by asserting her personal beliefs as to the credibility of a witness as well as calling the witness a liar. No objection was made to this comment, and so we must apply the plain error standard, *Goodman v. State*, Wyo., 601 P.2d 178 (1979). That is, it must not only be

clear on the record that an unequivocal rule of law was breached, but also the violation must be serious enough to undermine the fairness of appellant's trial. *Barnes v. State*, Wyo., 642 P.2d 1263 (1982). We said in Goodman, and have repeatedly said, that objection should be made at the time of the allegedly prejudicial comment in order that the trial court will have the opportunity to take corrective measures. *Goodman v. State, supra*, 601 P.2d at 187.

Under any standard, we find no merit to appellant's contention. The defense presented George Robinette as a witness. He testified that he was never in appellant's home at the same time as Bill Witt and one Brett Thompson. Bill Witt had previously testified that all three people were in appellant's home on the night that he bought cocaine from the appellant. On cross-examination, the witness Robinette denied having previously stated to prosecutors and law enforcement officers that he stayed away from the appellant's home in order to avoid the drugs there. The State called Officer Kremer as a rebuttal witness to impeach this last testimony.

Appellant argues that the prosecutor was attesting to the credibility of the witness, and asserting her own personal beliefs when she argued:

" * * * Mr. Robinette lied on the witness stand. Officer Kremer testified that the conversation occurred yesterday in Mr. Judson's [the county attorney's] office; that Mr. Judson was present, I was present * * *."

▆ It is well established that it is impermissible for a prosecutor to assert his or her own credibility as a basis for conviction of defendants. *Browder v. State*, Wyo., 639 P.2d 889, 893 (1982); *United States v. Herrera*, 531 F.2d 788, 790 (5th Cir.1976). However, looking at the full text of the argument, and looking at the testimony it is clear that there is no error in the prosecutor's argument.

▆ Officer Kremer was called as a rebuttal witness, and testified as follows:

"Q. [By Mr. Judson] Officer Kremer, do you remember having a conversation in my office here in the courthouse yesterday?

"A. Yes, I do.

"Q. And who was present at that conversation?

"A. Yourself, Deputy County Attorney, Mrs. Patton, myself, and George Robinette.

*       *       *       *       *       *

"Q. Was there a conversation about Mr. Robinette's visits to Steve Wheeler's home?

"A. Yes, there was.

*       *       *       *       *       *

"Q. Was he asked whether or not he went to Steve Wheeler's home with any fequency [sic] during the time of this alleged incident?

"A. Yes.

"Q. And by whom was he asked that?

"A. By yourself.

"Q. And do you remember Mr. Robinette's response?

"A. Yes, I do.

"Q. What was Mr. Robinette's response?

"A. He said that he was trying to stay away from Mr. Wheeler's house because he was trying to straighten up his life because of the drugs that were involved there and that he had a wife and three children."

Then during closing arguments, Mrs. Patton argued:

" * * * I want to hit briefly on the Defendant's case. * * * You also heard Mr. Robinette, Officer Kremer's testimony on rebuttal clears up Mr. Robinette's testimony in whole as I see it. Mr. Robinette lied on the witness stand. Officer Kremer testified that the conversation occurred yesterday in Mr. Judson's office; that Mr. Judson was present, I was present, George Robinette was there; and Officer Kremer was there. At that meeting, Mr. Robinette said that he was trying to stay away from Mr. Wheeler's house because of all the drugs. So was

Officer Kremer's testimony. In direct opposition to Mr. Robinette's testimony. Consider that. * * * "

█ The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence. *Browder v. State, supra; Hopkinson v. State,* Wyo., 632 P.2d 79, 145 (1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Ross v. State,* 8 Wyo. 351, 57 P. 924 (1899). Closing arguments are arguments based on the evidence submitted to the jury; counsel may review the evidence and offer to the jury inferences based thereon. *Browder v. State,* supra, 639 P.2d at 893.

The comment made by the prosecutor was merely directing the jury's attention to an inconsistency in a witness' statement. Mrs. Patton, in her closing argument, was reviewing the evidence already submitted to the jury. The evidence was that a meeting had taken place in Mr. Judson's office, that Officer Kremer was there, and Mr. Judson and Mrs. Patton were there, and George Robinette was there, and that George Robinette had said that he was avoiding Mr. Wheeler's house because of the drugs that were involved there. The evidence was also that Mr. Robinette had testified that he had said no such thing, and that the testimony was thus inconsistent.

We have been faced with similar cases before. In *Browder v. State,* supra, we reversed a conviction for improper statements made in the prosecutor's closing argument. A few weeks later, in *Barnes v. State, supra,* we upheld a conviction because the prosecutor's comments did not rise to the level of plain error. In both of those cases, we discussed the limitations placed on prosecutors in making their closing arguments. We also said that the occasional use of "I" in closing arguments is not necessarily objectionable. We held in Barnes that the argument of counsel there was not as blatant, repetitious or damaging to the appellant's trial as in Browder. *Barnes v. State, supra,* 642 P.2d at 1266. A year later we had the same issue in *Freeze v. State,* Wyo., 662 P.2d 415 (1983). We said, in *Freeze,* that we must look at counsel's argument in its entirety, and not take sentences and phrases out of context. *Freeze v. State, supra; Hopkinson v. State,* supra, 632 P.2d at 166.

In comparing the instant case to prior similar cases and applying the law written there, it is abundantly clear that no error occurred here, let alone plain error.

Affirmed.